JAMES C. AYER *et al.* Respondents, *against* FREDERICK V. RUSHTON, Appellant.

(Decided February 5th, 1877.)

Words in common use as descriptive of medicines for particular diseases, or which merely indicate by its common name an ingredient of a medicine, cannot be appropriated by a manufacturer of such medicine as a trade-mark, nor can a combination of such words be so appropriated. *Caswell* v. *Davis*, 58 N. Y. 223, followed as controlling.

Plaintiffs invented and prepared a medicine for chest diseases to which they gave the name of " Cherry Pectoral," and which was extensively known and sold as "Ayer's Cherry Pectoral ;" one of the ingredients was extract of wild cherry, and the word " pectoral " had been before the invention of plaintiffs' medicine, applied to medicines for chest diseases. *Held*, that the plaintiffs could not claim the exclusive use of the words " Cherry Pectoral " as a trade-mark.

APPEAL by the defendant from a judgment in favor of the plaintiffs, granting a perpetual injunction against manufacturing a compound called " cherry pectoral," and using that name upon bottles, labels, or wrappers, and selling any compound by that name, and against imitating the plaintiffs trade-mark " cherry pectoral." The defendants appealed upon the judgment roll including the findings of fact and law made at special term.

*Everett P. Wheeler*, for appellant.

*John Sherwood*, for respondents.

JOSEPH F. DALY, J.—The findings of the learned judge at special term that " the article put up, advertised and offered for sale and sold by defendant under the title and name " cherry pectoral " is well calculated to deceive and mislead purchasers and to induce them to believe that the said article of defendant is that of the plaintiffs : " and that " the defendant, with the wrongful intent to induce purchasers to believe

that the article sold by him was the same as that of the plaintiffs, and with the wrongful intention of securing to himself the benefit of the plaintiffs' trade-mark, has imitated the trade-mark of the plaintiffs so closely as to mislead and deceive purchasers;" and that "the use by defendant of the words name and title "Cherry Pectoral" is a wrongful and unlawful imitation of the words, name and title " Ayer's Cherry Pectoral," the plaintiffs' trade-mark: are not, in my opinion, sustained by the sixth and ninth findings in which the several compounds, packages, labels and wrappers of the plaintiffs' and defendant's preparations are set forth and in which the defendant's acts in presenting his compound to the public and endeavoring to make sales of it, are minutely described. From these findings it appears that both preparations are nearly alike in color, taste and smell, although defendant has lately altered his compound slightly, in these particulars; that they are both put up in oblong flat clear glass bottles; that plaintiffs' bottles contain about six ounces and defendant's about five and a half ounces; that plaintiffs' bottles are stamped " Ayer's Cherry Pectoral," and defendant's (I assume in the absence of any finding on that point) are not stamped; that plaintiffs' bottles are in a paper wrapper of a deep orange color, and defendant's bottles in a white paper wrapper; that plaintiffs' wrapper bears the printed words (the color of the ink not specified in the finding) " Ayer's Cherry Pectoral for the various affections of the lungs and throat, such as Colds, Coughs, Croup, Asthma, Influenza, Hoarseness, Bronchitis, and incipient consumption, and for the relief of consumptive patients in advanced stages of the disease. Prepared and sold by J. C. Ayer, Lowell, Massachusetts. Price one dollar;" and defendant's wrappers bear the words, printed in red ink, " Cherry Pectoral, Rushton, F. V." and upon an inside wrapper " Cherry Pectoral," and after some printed words of description and recommendation the words, " For Sale wholesale and retail by Rushton & Co., 11 Barclay street, New York, formerly of No. 11 Astor House;" that defendants advertised by posters, placards and signs the words " Cherry Pectoral," for sale at 11

Barclay street, and placed signs in front of his store with the words "Depot of the Cherry Pectoral Company" thereon; that he conspicuously placed in his store a placard with the words "Ayer's Cherry Pectoral, one dollar. Rushton's Cherry Pectoral, fifty cents, which will you have?" that he instructed his clerks to answer to purchasers who called for Ayer's Cherry Pectoral that his Cherry Pectoral was not Ayer's, and to ask persons inquiring for Cherry Pectoral which they wanted, Rushton's or Ayer's, and to say that Rushton's was much better; that bottles containing said preparations are almost uniformly sold in closed opaque paper wrappers.

We have then, the undisputed circumstances that defendant has been careful to distinguish his preparation from plaintiffs', by a marked difference in the color of the wrappers, the lettering and the arrangement of the words printed on the wrapper, and by distinctive announcements, the signs in his store and through his clerks. In fact he seems to have taken precautions to prevent the two compounds from being confounded in the eyes of purchasers; and to prevent purchasers being misled or deceived into buying his medicine under the impression that it was plaintiffs' medicine.

Defendant certainly did take advantage of the celebrity of plaintiffs' preparation to which the name of "Cherry Pectoral" seems, from the findings, to have been exclusively applied in the trade, in the last thirty years or more, to gain a readier market for a preparation of his own which he called "Cherry Pectoral." Whatever popularity Ayer's Cherry Pectoral had acquired as a medicine for throat and lung affections, he hoped to gain advantage from, by calling his medicine a Cherry Pectoral, thus inducing persons to try his compound, if they could be persuaded that one Cherry Pectoral was as good as another. To this extent, and a very great extent it is no doubt, defendant proposed to build up a business upon and avail himself of, the fame which years of sale and a great expenditure of money for advertising on the part of plaintiffs and their predecessors had acquired for the well-known preparation they manufactured, but there is clear

proof that he did not intend to incur any penalties for imitation of devices, labels, or marks, or for attempts to impose his compound upon the public as the article plaintiffs' manufactured. He kept within the letter of the law, if he were at liberty to call his preparation " Cherry Pectoral."

It appears from the findings, that Ayer's Cherry Pectoral is a medicine for the relief and cure of affections and diseases of the lungs and throat, of which medicine the extract of wild cherry is one of the beneficial ingredients. The word " cherry " describes, therefore, one of the ingredients of the compound, and the word " pectoral " describes the use and application of the medicine. The findings show that " pectoral," as an adjective referring to medicine for the throat and lungs, was known to scientific men, and was found in books of surgery, &c., before plaintiffs' compound was invented ; and that medicines for the throat and lungs called " Pectoral Syrup," and " Pectoral Wine," appear in medical books prior to the plaintiffs' use of the word ; that a medicine called " Britton's Pectoral Syrup " had been made and sold in Northamptonshire, England, before that time ; that in dictionaries published before plaintiffs' manufacture of " Cherry Pectoral," began in 1842, and of standard dictionaries of the English language, show that the word " pectoral," as a noun, as well as an adjective, was and is a common established word in the language signifying a medicine for coughs, for the stomach and lungs, for the breast and for diseases of the breast. (Johnson's Dict. (Ed. 1799) ; Dunglison's Med. Dict. (Tit. " Pectorals); " Ree's Cyclopædia ; Richardson's Dict. ; Blunt's (1681) ; Philips' " New World of Words "; Glossographia Anglicana (1707); Cole's Dict. (1717) ; Kersey's Eng. Dict. (1721) ; Bailey's Dict. (1763) ; Johnson (1763) ; Ash (1765) ; Allison (1813) ; Worcester.) The word " pectoral," therefore, is common property, as descriptive of a medicine for diseases of the chest, breast, lungs and throat, and no person can acquire an exclusive right to its use in that sense. The word " cherry," indicating an ingredient, or the sole or chief ingredient, as an extract or tincture of wild cherry in a medi-

cine, cannot become the exclusive property of any person, to describe the medicine in the compounding of which it is used. The same must of course be said of a descriptive term made up of the two words "cherry" and "pectoral," used to describe the ingredients and use of the compound.

The late case of *Caswell* v. *Davis* (58 N. Y. 223) is controlling as a decision directly in point.

No attempt is made by defendant to infringe plaintiffs' trade-mark in the name of "Ayer," in which they have an exclusive property, and the injunction prayed for against the use of the name "Cherry Pectoral" should have been denied.

VAN HOESEN, J., concurred.

Judgment reversed, and new trial ordered costs to abide event.