BROWN CHEMICAL CO. *v.* FREDERICK STEARNS & CO.

(*Circuit Court, E. D. Michigan.* January 7, 1889.)

1. TRADE-MARKS—"IRON BITTERS."
   The words "Iron Bitters," being indicative of the composition of the article so called, cannot be claimed as a trade-mark.[1]

2. SAME—DISHONEST COMPETITION IN TRADE.
   If one person can, by superior energy, by more extensive advertising, by selling a better or more attractive article, or by greater frankness in disclosing the ingredients of his compound, outbid another in popular favor, he has a right to do so, provided he does not attempt to palm his goods off as those of another. This right is not impaired by an open avowal of his intention to compete with the other, or even to drive him out of the market. But he has no right, however honest his personal intentions, to use so much of his rival's name or trade-mark as will enable any dishonest trader, into whose hands his own goods may come, to sell them as the goods of his rival.

3. SAME.
   Hence where plaintiff was the proprietor of a preparation known as "Brown's Iron Bitters." and defendant of another, called "Iron Tonic Bitters" which it falsely stated to be made by "Brown & Co., New York," it was held that such statement should be enjoined.

(*Syllabus by the Court.*)

In Equity.

This was a bill to restrain the illegal use of plaintiff's trade-mark. The bill alleged that the plaintiff many years ago adopted as a designation for a medicinal preparation the words "Brown's Iron Bitters," which designation it has since continuously used. That the preparation is now and has been known to consumers, and identified by the name "Iron

---

[1] In general, as to what words will be protected as a trade-mark, see Manufacturing Co. v. Stone Co., 35 Fed. Rep. 896, and note; Indurated Fibre Co. v. Fibre Ware Co., *post*, ——, and note.

Bitters;" the word "Brown's" being often omitted, or lost sight of. · That, in order to distinguish its said medicine, plaintiff adopted a package consisting of a bottle of amber-colored glass, rectangular in shape, having one of its sides flat, and the other three depressed to resemble panels, upon which it applied a white label, having upon it in conspicuous characters the words "Iron Bitters," with other descriptive and ornamental matter. That this bottle and label were placed in a carton or box of paste-board, around which was placed an exterior label or wrapper with the words "Iron Bitters" conspicuously displayed, so as to attract the attention of consumers, and it avers that by reason of these facts plaintiff claims an exclusive right to the use of the words "Iron Bitters," and to the other features whereby its medicine is identified. That whether it has an exclusive right in the premises or not, the defendant, which is a Michigan corporation, has entered upon an unlawful and unfair competition, by putting up its goods so that the packages resemble those of the plaintiff's, and selling them under the name of "Iron Tonic Bitters." That the defendant adopted and used a form of package corresponding in many particulars to those used by the plaintiff, its purpose being to sell the article upon the reputation established by the plaintiff for its iron bitters. The answer denied that the bottle was distinctive in its character, and averred that the shape and form of the bottle were not important. It also averred that defendant has never in any manner imitated the plaintiff's package; that it is a corporation organized to carry on the business of manufacturing pharmacists, and for the object of doing a legitimate business according to known and established *formulæ*, in opposition to all secret, quack medicines, for which reasons it has always been careful to avoid the use of any wrapper, label, or package which could possibly be mistaken by any person for those of any manufacturer of secret medicines; that it has made a preparation called "Iron Tonic Bitters," made in accordance with the formula for bitter wine of iron, a standard and recognized medical preparation, which it has put up in bottles differing materially from plaintiff's; that it has never sold its "Iron Tonic Bitters" so that the bottle could be seen by the purchaser, but has put it in a carton or box, which has been inclosed in a wrapper which does not in any way resemble that of the plaintiff.

*Rowland Cox*, for plaintiff.

*Geo. H. Lothrop*, for defendant.

BROWN, J. We had occasion several years ago, in the case of *Burton* v. *Stratton*, 12 Fed. Rep. 696, to make a somewhat careful examination of the law of trade-marks, and then found the following propositions abundantly sustained by authorities.

1. That words which are merely descriptive of the character, qualities, or composition of an article, or of the place where it is manufactured or produced, cannot be monopolized as a trade-mark.

2. That a court of equity will enjoin unlawful competition in trade by means of labels of peculiar design or colors, or packages of distinctive

shapes, intended to enable the defendant to pass his goods off as those of the plaintiff.

· (1) Under the first of these rules, we are satisfied that no monopoly can be claimed of the words "iron bitters," which are indicative of the composition of the article, and were so held in *Chemical Co.* v. *Myer*, 31 Fed. Rep. 453.

. (2) The evidence that the defendant designed to compete with the plaintiff in the sale of iron bitters, and, if possible, to supplant it in the market, is abundant; but the evidence that this was done by any unfair or illegal means, or by an endeavor to induce the public to buy its goods under the impression that they were buying the goods of the plaintiff, is quite inconclusive. If one person can by superior energy, by more extensive advertising, by selling a better or more attractive article, or by greater frankness in disclosing the ingredients of his compound, outbid another in popular favor, he has a perfect right to do so. Nor is this right impaired by an open avowal of his intention to compete with the other, or even to drive him out of the market. It is the policy of the law to encourage competition in business, and to discourage monopolies where they are not protected by law, provided it be accomplished by open and honorable methods of dealing. Apparently for the purpose of competing with the plaintiff, the defendant announced in its catalogue that it had "no patents, no trade-marks, no secret processes;" that one of the features of its business was to put up what are known as non-secret medicines, and to put them up avowedly to replace quack, secret, or patented nostrums in the sales of retail druggists; simulating them in those points deservedly popular, but not imitating or copying them otherwise. This leading feature of its business it amplifies at considerable length, and sets forth the reasons why, in its opinion, such methods would be more profitable to its customers. With regard to the preparation in question, it announces: "Our Iron Tonic Bitters is an elegant preparation; a pleasant bitter and appetizer; replaces perfectly the patented nostrums called 'Harper's Iron Tonic,' and 'Brown's Iron Bitters.'" These bitters it put up in bottles of similar shape and color to the plaintiff's, but of larger size, and with a wholly different label,—so different, indeed, that it is scarcely claimed to be an infringement. Upon this label the words "Iron Tonic Bitters' are conspicuously displayed, with the name of the defendant as manufacturer, and with a notice that it is put up according to the recognized formula for bitter wine of iron. This bottle was packed in a paper box or carton, which was itself inclosed in a label wholly different in design from that of the plaintiff; indeed, there is no similarity in the different packages, except in the bottles, which are of a shape akin to many containing medicinal preparations, and could never deceive an intending purchaser, as they are not visible until they are withdrawn from the carton. Plaintiff insists, however, that the similarity in shape and color of the bottles is of itself sufficient evidence of an intent to deceive, and relies in that connection upon the case of *Food Co.* v. *Baumbach*, 32 Fed. Rep. 205. In this case, however, the defendant adopted an unusual style of bottle, viz., a cham-

pagne bottle, with a label and wrapper sufficiently resembling plaintiff's label and wrapper to deceive the general public, bearing the words, "Standard Nerve Food." The case differs from the one under consideration in the fact that the bottle was of unusual shape for preparations of that description, and there was no evidence that the bottle was packed in a carton so as to conceal its shape from the purchaser. Upon the whole, we think the evidence is quite insufficient to show any unlawful competition upon the part of the defendant, or any such imitation of its packages, labels, or wrappers as would induce any one to believe he was buying the preparation of the plaintiff.

(3) In a few cases, and to accommodate a particular dealer, the words "Brown & Co., N. Y. City," were printed upon the bottom of the label in the place of the name of the defendant. The evidence upon this point tends to show that the witness Powell visited a druggist in Hamburg, Iowa, and asked for a bottle of Brown's Iron Bitters. He was informed by a member of the firm that they kept the bitters, and was referred to a clerk, who handed him one of the defendant's packages, and told him that it was Brown's Iron Bitters. On being asked if he didn't know that the article was made by the defendant, he acknowledged that he did, and said that he knew it was not the article made by the plaintiff. In explanation, the defendant states that one Snodgrass, of whom the Hamburg druggists were the successors, in November, 1882, sent an order for goods, not embracing any Iron Tonic Bitters, on which he directed to be printed the name of Brown & Co., of New York, and that this practice has since been followed without notice or special attention on defendant's part. This appears to be a common practice among country dealers, as it enables them to do a jobbing business, which they could not do, if their own name, or that of the real manufacturer, was on the goods. While this explanation relieves the defendant from the charge of a fraudulent design on its part, and there is no evidence that any one was ever actually deceived by this label, or thereby induced to buy defendant's preparation under the belief that it was plaintiff's, one can easily imagine that the effect of it might be to mislead intending purchasers, and perhaps induce them to think they were buying Brown's Iron Bitters. Indeed, the evidence of Powell in this case indicates that the Hamburg druggists endeavored to palm off the package upon him as manufactured by the plaintiff. To such efforts, whether innocent or not, the defendant has no right to lend itself. We believe the rule stated by Lord WATSON in *Johnston* v. *Ewing*, L. R. 7 App. Cas. 219, 232, to be a wholesome one: "But no man, however honest his personal intentions, has a right to adopt and use so much of his rival's established trademark as will enable any dishonest trader into whose hands his own goods may come to sell them as the goods of his rival." To this extent, and to this only, we think plaintiff is entitled to its injunction; but, as the number sold appears to be small, we do not think it worth while to put the parties to the expense of a reference to a master to compute damages. A decree will be entered in accordance with this opinion, but without costs to either party.