J. ELLWOOD LEE CO. v. McCLAIN, Collector (two cases).

(Circuit Court, E. D. Pennsylvania.   January 15, 1901.)

Nos. 30, 31.

INTERNAL REVENUE—STAMP TAX ON MEDICINAL ARTICLES—PLASTER.

The terms "medicinal articles compounded" and "medicinal articles compounded by any formula published or unpublished," as used in section 20 of the war revenue act of 1898, are not trade expressions having a defined meaning by commercial use or in the business of druggists and pharmacists, but the word "compounded" is used in its ordinary sense, as meaning "mixed."   Plasters made by mixing one or more medicinal drugs with a base, having either no medicinal effect or none which is designed or important, by private formulas, although not held out as being proprietary, such plasters being advertised as having some special claim to merit and as remedies or specifics for some ailment, are "medicinal articles compounded," within the meaning of said section, and subject to tax under Schedule B.

Actions against Defendant, as Collector of Internal Revenue, to Recover Stamp Taxes Paid.

Henry P. Brown, for plaintiff.
Francis Fisher Kane, for defendant.

DALLAS, Circuit Judge:   These actions were tried together, and by the court without the intervention of a jury, in pursuance of a stipulation filed in accordance with sections 649 and 700 of the Revised Statutes.   They were brought to recover the sums paid by the plaintiffs to the defendant, collector of internal revenue for the First district of Pennsylvania, for stamps affixed by the plaintiffs to certain plasters manufactured by them.   The question to be decided is whether those plasters were subject to stamp tax under section 20 and Schedule B of the act of congress of June 13, 1898, which are as follows:

"Sec. 20. That on and after the first day of July, eighteen hundred and ninety-eight, any person, firm, company or corporation that shall make, prepare and sell, or remove for consumption or sale, drugs, medicines, preparations, compositions, articles or things, including perfumery and cosmetics, upon which a tax is imposed by this act, as provided for in Schedule B, without affixing thereto an adhesive stamp or label denoting the tax before mentioned, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall pay a fine of not more than five hundred dollars, or be imprisoned not more than six months, or both, at the discretion of the court: provided, that no stamp tax shall be imposed upon any uncompounded medicinal drug or chemical, nor upon any medicine sold to or for the use of any person which may be mixed or compounded for said person according to the written recipe or prescription of any practicing physician or surgeon, or which may be put up or compounded for said person by a druggist or pharmacist selling at retail only.   The stamp taxes provided for in Schedule B of this act shall apply to all medicinal articles compounded by any formula, published or unpublished, which are put up in style or manner similar to that of patent, trade-mark, or proprietary medicine in general, or which are advertised on the package or otherwise as remedies or specifics for any ailment, or as having any special claim to merit, or to any peculiar advantage in mode of preparation, quality, use or effect.   *   *   *

"Schedule B. Medicinal proprietary articles and preparations:   For and upon every packet, box, bottle, pot, or phial, or other inclosure, containing any

pills, powders, tinctures, troches, or lozenges, sirups, cordials, bitters, ano-dynes, tonics, plasters, liniments, salves, ointments. pastes, drops, waters (ex-cept natural spring waters and carbonated natural spring waters), essences, spirits, oils, and all medicinal preparations or compositions whatsoever, made and sold, or removed for sale, by any person or persons whatever, wherein the person making or preparing the same has or claims to have any private for-mula, secret or occult art for the making or preparing the same, or has or claims to have any exclusive right or title to the making or preparing the same, or which are prepared, uttered, vended, or exposed for sale under any letters patent or trade-mark, or which, if prepared by any formula, published or un-published, are held out or recommended to the public by the makers, vendors, or proprietors thereof as proprietary medicines or medicinal proprietary articles or preparations or as remedies or specifics for any disease, diseases. or affec-tion whatever affecting the human or animal body, as follows: Where such packet, box, bottle, pot, phial, or other inclosure, with its contents, shall not exceed, at the retail price or value the sum of five cents, one-eighth of one cent. Where such packet, box. bottle, pot, phial or other inclosure, with its contents, shall exceed the retail price or value of five cents and shall not ex-ceed, at the retail price or value, the sum of ten cents. two-eighths of one cent. Where such packet, box, bottle, pot, phial or other inclosure with its contents, shall exceed the retail price or value of ten cents, and shall not exceed at the retail price or value the sum of fifteen cents, three-eighths of one cent. Where each packet, box. bottle, pot, phial or other inclosure, with its contents, shall exceed the retail price or value of fifteen cents and shall not exceed the retail price or value of twenty-five cents, five-eights of one cent. And for each addi-tional twenty-five cents of retail price or value or fractional part thereof in excess of twenty-five cents, five-eighths of one cent."

The requests for findings of fact which have been submitted by counsel are annexed hereto for the purpose of exhibiting their re-spective contentions as to the effect of the evidence, but they need not be separately considered. They are, I think, sufficiently an-swered in the following finding of the court upon the facts:

The plasters in question are "medicinal articles," not "medicinal drugs or chemicals." They are made by mixing several substances, in-cluding in many instances more than one medicinal drug; but in others a single medicinal drug is mixed with a "base," which is composed of drugs having either no medicinal effect, or none which is designed or is important. They are prepared from formulas, which are "private," in the sense of being owned by the plaintiffs, who do not make them public; but they are not, and are not held out as being, proprietary, and the plaintiffs do not have or use, nor claim to have or use, any "secret or occult art" in making them, and other manufacturers make, or can make, with some slight variation, plasters of the same kinds. The plaintiffs' plasters are, however, "put up in style or man-ner similar to that of patent, trade-mark or proprietary medicine in general," and are advertised as having "special claim to merit, or to * * * peculiar advantage in mode of preparation, use or effect," and some of them "as remedies or specifics for [any] some ailment." Whether they are or are not "compounded by any formula published or unpublished" depends upon the meaning to be ascribed to the word "compounded" as it was used by congress. But, although the intent of that body is really matter of fact, yet the interpretation of the lan-guage of a statute has always been regarded as matter of law, and as such the question here suggested will presently be considered. As pertinent to that subject, however, I further find that while it is true, as claimed by the plaintiffs, that the plasters in suit are not known

or designated as "medicinal articles compounded," it is also true that neither "medicinal articles compounded," nor "medicinal articles compounded by any formula published or unpublished," is a trade expression, or has been in any way defined by "common or commercial use * * * in the business of druggists and among pharmacists."

## Opinion.

Section 20 makes the omission to stamp articles upon which a tax is imposed by the act, as provided in Schedule B, a misdemeanor; and the plasters in question, not being "medicinal drugs or chemicals," are not excepted by the proviso of that section, but, if compounded, are plainly covered by its immediately following statement, that the stamp taxes provided for in Schedule B "shall apply to all medicinal articles compounded by any formula," etc. I cannot sustain the plaintiffs' contention respecting the effect which should be given to the word "compounded." I cannot agree that it was employed in this act in a peculiar or technical sense. It does not appear to have, in the trade, any meaning other than "mixed," which is its common and ordinary one. It certainly has no special meaning with pharmacists which is generally understood and established, for those of them who have testified in this case have not agreed as to its proper application. It seems that they sometimes apply it to a medicine composed of several drugs, but not to a composite medicinal article, such as a plaster. Consequently it must have been used in this statute in its ordinary sense, for, when related to such articles,—and the statute plainly so relates it,—it could have no other. I am therefore of opinion that all of these plasters are medicinal articles compounded, and that, being put up and advertised as has been heretofore stated, they are, under the last clause of section 20, subject to the tax in question. But, notwithstanding the provision of that clause that "the stamp tax provided for in Schedule B * * * shall apply to all medicinal articles compounded," etc., it has been insisted that the terms of the schedule itself are exclusive of the particular articles involved in this controversy; but, in my opinion, they are not so. The schedule expressly mentions "plasters," and the disjunctive qualifying phrases which follow are, with respect to the facts of this case, not operative. Judgment for defendant.

Substituted Requests for Findings of Fact on Behalf of the Plaintiff.

The learned court is requested to find the following facts: (1) The following plasters, viz.: "Belladonna," "Capsicum," "Capsicin," "Strengthening," "Thapsia," "Warming," "Mercurial," "Blister," "Salicylic Acid," "Arnica," "Oxide of Zinc," "Opium," "Aconite," "Menthol," "Tar," "Iron," "Bergundy Pitch," "Galbanum," "Bryonia," "Poormans'," "Electric," "Breast," "Magnet," "Hemlock," "Mustard," "Slippery Elm,"—are each composed of a medicinal drug mixed with a base composed of nonmedicinal drugs, used as a vehicle for the administration of the medicinal drug. (2) The plasters above enumerated in the first request for findings of fact are "uncompounded medicinal drugs or chemicals." (3) None of the plasters in suit are known or designated as "medicinal articles compounded," according to the common or commercial use of that term in the business of druggists and among pharmacists. (4) None of the plasters in suit are put up in style or manner similar to that of patent, trade-mark, or proprietary medicine in general. (5) None of the plasters in suit are advertised on the package or otherwise as remedies or specifics for

any ailment, except the following viz.: "Cough," "Poormans'," "Iron," "Belladonna and Capsicum," "Bryonia," and "Mustard." (6) None of the plasters in suit are advertised on the package or otherwise as having any special claim to merit. (7) None of the plasters in suit are advertised on the package or otherwise as having any peculiar advantage in mode of preparation, quality, use, or effect. (8) The plasters in suit are not "medicinal proprietary articles or preparations." (9) None of the plasters in suit are "medicinal proprietary" plasters or preparations or compositions wherein the person making or preparing the same has or claims to have any private formula, secret or occult art, for the making or preparing the same. (10) None of the plasters in suit are "medicinal proprietary" plasters or preparations or compositions wherein the person making or preparing the same has or claims to have any exclusive right or title to the making or preparing the same. (11) None of the plasters in suit are "medicinal proprietary" plasters or preparations or compositions which are prepared, uttered, vended, or exposed for sale under any letters patent or trade-mark. (12) None of the plasters in suit are "medicinal proprietary" plasters or preparations or compositions which, if prepared by any formula, published or unpublished, are held out or recommended to the public by the makers, venders, or proprietors thereof as proprietary medicines, or medicinal proprietary articles or preparations. (13) None of the plasters in suit are "medicinal proprietary" plasters or preparations or compositions which, if prepared by any formula, published or unpublished, are held out or recommended to the public by the makers, venders, or proprietors thereof as remedies or specifics for any disease, diseases, or affection whatever, affecting the human or animal body.

Substituted Requests for Findings of Fact on Behalf of the Defendant.

(a) (1) All the plasters are plasters wherein the person or persons making them had private formulas for making them. Even the simplest of them consists of a carefully prepared mixture, spread upon muslin or some such material, prepared according to a formula adopted after careful study and experiment. (2) All the plasters are put up in wrappings and boxes bearing the plaintiff's trade-mark, and a special style of display, consisting of markings and legends adopted by it in selling its goods. All are therefore held out and recommended to the public by the makers as medicinal proprietary articles or preparations. (3) The phrase "medicinal articles compounded by any formula published or unpublished" is not a trade expression. Assuming, however, that the trade testimony as to the meaning of the word "compounded" was admissible, the weight of the testimony shows that the meaning of the word in the drug trade is the same as its ordinary, common meaning. Its ordinary, common meaning is "mixed." "Medicinal articles" may be compounded, as well as "drugs" or "medicines"; and therefore a "medicinal article compounded" may be an article in which there is only one "drug," provided the whole consist of several different substances mixed together. All the plasters are, therefore, medicinal articles compounded. (4) All the plasters are put up in wrappings and boxes bearing the plaintiff's trade-mark, and a special style of display, consisting of markings and legends adopted by it in selling its goods. All are, therefore, medicinal articles put up in a style and manner similar, at least, to that of trade-mark or proprietary medicines in general. (5) All the plasters are advertised on the packages or otherwise as having special claims to merit, and as having special claims to peculiar advantages in mode of preparation, quality, use, or effect.

(b) (1) The "Mustard" plasters, "Bryonia," "Belladonna and Aconite," "Rhus Tox and Bryonia" (and perhaps some other plasters which were sold with the same cover as that which inclosed the "Bryonia"), "Kidney," "Cough," and "Rheumatic" plasters, are held out and recommended as remedies for the affections of the human body, and are advertised on the package or otherwise as remedies or specifics for ailments. (2) "Belladonna and Opium," "Belladonna and Capsicum," "Belladonna and Aconite," "Rhus Tox," "Spice," "Cough," "Kidney," and "Rheumatic," contain more than one active drug, and therefore are "medicinal articles compounded," even if the interpretation of the word "compounded" contended for by the plaintiff be correct, and even if the "pitch" used by the plaintiff be not a medicinal substance. The "Warm-

ing Plaster" is advertised on the box as "Warming (Pitch and Cantharides)." If, therefore, the "pitch" in it is a drug, this plaster should be included in this special list.