ARCHBALD, District Judge.*
By agreement of the parties this case was heard by the court without a jury under the provisions of the statute. The facts are found to be as follows:
The Facts.
(1) The plaintiffs, Johnson & Johnson, incorporated, are manufacturers of surgical supplies at New Brunswick, N. J., and have been for a number of years past; and between July i, 1898, when the war revenue act of that year went into effect, and March x, 1899, following, they manufactured and sold to druggists and others the different kinds of medicinal plasters enumerated in the declaration.
(2) Between the dates mentioned the defendant, as collector of internal revenue for the Fifth New Jersey district, holding that the said plasters were subject to a tax under the provisions of the act referred to, required the plaintiffs to affix thereon and cancel internal revenue stamps to the amount of $1,943.94^, which sum the plaintiffs paid the defendant under protest and on threat of distress in case of refusal.
(3) The plasters in question are manufactured and prepared according to formulas taken either from the United States or the National Dispensatory, or from the British Pharmacopoeia, all well-known publications of accepted authority, and are standard medical preparations, constantly prescribed and used by physicians and surgeons. Similar plasters, based on the same formulas, are prepared by other manufacturers of surgical supplies, and come in competition with the plaintiffs’ plasters in the general trade.
.(4) These plasters, the same as those of other manufacturers, are put up for convenience in tin or pasteboard boxes in varying quantities, with descriptive labels giving the kind of plasters contained therein, the fact that they are manufactured by the plaintiffs, and directions in different languages how, but not in what cases, they are to be used or applied. On each box a red Greek cross, surrounded by a wreath, is prominently displayed; this symbol having been adopted and duly registered by the plaintiffs as a trade-mark,, by which not only these buff all the articles, manufactured by them are designated and commercially known. So distinctive has this trade-mark become that their goods are often spoken of as “Red Cross” goods, and are advertised by the plaintiffs under that name.
(5) The plaintiffs claim no proprietary rights, however, by virtue of their trade-mark in any of these plasters, but do claim that, like their other goods, they have a special merit by reason of the care exercised in the selection of the materials used and the manner in which they are prepared or compeunded, and that this is what their trade-mark.guaranties and stands for.
*995 (6) The following is a fac simile illustration, except as to color, of the display on the outside of the belladonna plaster packages:

The others, with a change of name, are substantially similar, except that in case of the Iceland moss, oxide zinc, slippery elm, and linseed poultice plasters the words “Patent Applied for” appear on the package; and in case of the blister plaster it is declared that, when used according to directions, “it never fails to blister.” On the back of this plaster also, and on one or two others, the. plaintiffs’ initials “J. & J.” are printed in repeated squares or circles, which cover the whole surface.
(7) The plasters in controversy are medicinal articles prepared and compounded according to certain published formulas as aforesaid, but are not, as matter of fact, medicinal proprietary articles or preparations; nor are they held out or recommended to the public as such; nor (except as they may be so adjudged from what is above stated) are they prepared, uttered, vended, or exposed for sale under any letters patent or trade-mark; nor put up in style or manner similar to that of patent, trade-mark, or proprietary medicine in general; nor are they advertised on the package or otherwise as remedies or specifics for any ailment; nor, except as above stated, as having any special claim to merit, or to any peculiar advantage in mode of preparation, quality, use, or effect.
The L,aw.
This case arises under section 20 of the war revenue act of 1898, and Schedule B following it, set forth in full in the margin.[1] Ac *996 ■cording to the heading of the schedule, the things intended to-be taxed are “Medicinal' Proprietary Articles and Preparations”—a description which discloses the general subject in the legislative mind, of which that which follows may be regarded as the particulars. Knowlton v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969. It is to be observed at the outstart that not all medicinal preparations are intended to be taxed, else the act, without further circumlocution, would have said so. It is true that tire proviso excepts uncompounded drugs, and the prescriptions of physicians and surgeons put up by retail druggists, as though these would be otherwise included within the act; but manifestly this was inserted out of extra precaution, being brought forward from preceding statutes, and is not to be regarded as affording an argument for enlarging its terms.
Looking at the underlying economic reason which, as it is to be assumed, prompted the tax, it is also evident that the medicinal preparations which it seeks to reach are the noncompetitive, more or less monopolistic, kinds which are protected against imitation by patent, trade-mark, or proprietary rights. Not only are these by their origin withdrawn from trade competition, but they notoriously yield large profits when once they have caught the public eye, which is industriously directed to them- by advertising and puffing, and, because of a fixed retail price, are able to. be taxed in the hands of the proprietor, and not of the consumer—a desirable result, in view of the doubtful utility of most of them.
On the other hand, medicinal preparations or articles are not exempt simply because they are manufactured or put up according to established and accepted medical formulas taken from standard pharmacopoeias or publications. It may be a circumstance in their favor *997 that they are, but it is not controlling. According to the preceding enactments from which the one under discussion is in part derived, no doubt they would have been. Act July 1, 1862, § 107, 12 Stat. 478;[2] Act June 30, 1864, § 165, 13 Stat. 296. But it is expressly declared in the present act, substantially following section 3436 of the Revised Statutes,[3] that, with certain qualifications, to be presently noticed, it shall apply to “all medicinal articles compounded by any formula published or unpublished”—a change from the earlier statutes which needs no comment.
Coming directly to the case in hand, it is manifest that in no sense are the plaintiffs’ preparations proprietary in character. In composition they are exactly similar to other plasters bearing the same name, put up by competing manufacturers, an-d based on the same well-known medical formulás. A claim to special merit is, indeed, made, but only with regard to the care exercised in the selection of ingredients and the manner in, which they are compounded—an advocacy of their own goods which falls far short of making them proprietary, as that term is to be understood. Ferguson v. Arthur, 117 U. S. 482, 6 Sup. Ct. 861, 29 L. Ed. 979; State v. Donaldson, 41 Minn. 80, 42 N. W. 781.. Excluding the plasters in controversy, therefore, from this class, the case turns on the question whether, being admittedly medicinal preparations, they are “prepared, uttered, vended, or exposed for sale under any letters patent, or trade mark,” within the meaning of the schedule; or, as expressed in section 20, “are put up in style *998 or manner similar to that of patent, trade mark, or proprietary medicines in general”; or “advertised on the packages or otherwise * * * as having any special claim to merit or to any peculiar advantage in mode of preparation, quality, use, or effect.” It is found as a fact that none of this is true of them, but, as this finding is due in part to the view taken of the statute, it may need to be further justified.
The words, “under any letters patent or trade mark,” must be understood to mean under the protection of either of the same. According to the British statutes, the inventor of a patent medicine registers his formula, and thereby secures a monopoly of composition in which he is positively protected from imitation by the letters patent issued to him thereon. Pharmaceutical Society v. Piper, 1 Q. B. (1893) 682; Same v. Armson, 2 Q. B. (1894) 720. A patent for the composition of matter (which would be the form, as I assume, it would take in this country) would operate in the same way, and a medicine so protected would come within the act of course. A trade-mark medicine, with which patent and proprietary medicines are coupled in the act, must, on the same basis, be held to be a medicine as to which a similar monopoly has been secured by the use of a trade-mark or trade-name under which it is prepared and sold. Examples are to be found in such medical compounds, familiar on account of the extensive way in which they are advertised, as “Castoria,” “Cuticura Plasters,” “Peruna,” “Omega Oil,” “St. Jacobs’ Oil,” “Ozomulsion,” “Thialion,” and a hundred others. In each of these the name stands for the composition, which cannot be obtained under any other. There are, however, a large number of articles, not only in the drug but other trades, which, though known and sold by specific names under which they have been put forth, are not and cannot be covered by trade-marks, for the reason that, being descriptive, the law does not permit it such as “Homoeopathic Specifics” (Humphrey’s Specific Homœopathic Medicine Co. v. Wenz [C. C.] 14 Fed. 250); “Iron Bitters” (Brown Chemical Co. v. F. Stearns & Co. [C. C.] 37 Fed. 360; Same v. Meyer, 139 U. S. 540,11 Sup. Ct. 625, 35 L. Ed. 247); “Cherry Pectoral” (Ayer v. Rushton, 7 Daly, 9); “Magic Headache Cure” (Gessler v. Grieb, 80 Wis. 21, 48 N. W. 1098, 27 Am. St. Rep. 20); and “Compound Fluid Extract of Buchu” (Helmbold v. Helmbold Mfg. Co., 53. How. Prac. 453). Closely allied to both these classes are those which assume a direct proprietary character, such as “Warner’s Safe Cure,” “Paine’s Celery Compound,” “Mrs. Winslow’s Soothing Syrup,” “D'r. Kilmer’s Swamp Root,” “Hoods’ Sarsaparilla,” and the like. All of these, whether proprietary or patented, or capable or not of being covered by a trade-mark, by the advertising by which they are pushed and the labels and packages by which they are dressed out, puffing their curative qualities and giving directions for self medication, are put up and pressed upon the public in the style in vogue in what may be called the patent-medicine trade, and are the preparations which the statute, whatever form they assume, was intended to reach and tax.
Now, manifestly, it is not the trade-mark that is taxed, where a trade-mark is used, but the medicinal preparation protected by it. Where, therefore, a trade-mark merely signifies the origin of the *999 preparation, and has no other purpose or connection with it, it cannot be said to protect it, nor, within the meaning of the law, can the medicine be said to be sold under it. It simply prevents one manufacturer from selling his goods as those of another, and so cutting into his trade. This is the exact situation here. The plaintiffs’ red cross trade-mark stamps the goods as theirs, and that is all there is to it. It is no doubt true that a certain merit is claimed for them in mode of preparation and quality, but only, as has already been stated, because of the care exercised in selecting and compounding the ingredients. This is a “puff” of themselves as manufacturers, and not of the goods, which are left to stand as medical preparations solely on their own merits. This coincides with the view expressed by Judge McPherson in the unreported case of J. Ellwood Fee Company v. McClain,[4] where he held that the trade-mark adopted by that company extended merely to the package in which the medicated gauze there in question was put up, and not to the gauze itself, which any’one could freely imitate, and which was not, therefore, to be regarded as a trade-mark preparation, within the meaning of the statute. I am aware that Judge Dallas in a case between the same parties (106 Fed. 164) held that the J. Ellwood Fee Company plasters, similar to those in suit, as medical articles compounded according to certain private formulas, were subject to a tax; but he found as a fact that they were put up in style similar to proprietary medicines, and that they were advertised as having special claim to merit or advantage in mode of preparation, and some of them as remedies or specifics for certain ailments. This, without more, brought them within the provisions of the statute; and, while it may be that a somewhat different idea of the law from that which is expressed above contributed to this result, it is to be noted that the case turned to a certain extent on the meaning of the word “compounded,” and that the attention of the court does not seem to have been directed to the particular views now advanced. Be that, however, as it may, if there is any conflict, I feel compelled, with all deference, to adhere to my own construction of the law.
It is said, however, that on some of the plaintiffs’ packages the words “Patent Applied for” appear, and that the plaster within is at the same time described as a “Soothing Dressing,” etc. Neither of these is sufficient, in my judgment, to distinguish these particular plasters from any of the rest. They do not have the style or character of patent medicines whatever may be so said of them, nor can they be regarded as “puffed” like a proprietary medicine or nostrum by the bare suggestion that as a dressing they possess a soothing quality. The same is the case with regard to the “Perfect” mustard, and the so-called “Strengthening” plasters. The word “perfect” in this connection is shown by the evidence to mean nothing more than “prepared” or “ready for use,” and to have been attached to this character of mustard plaster ever since it first made its appearance in the drug trade. The term “strengthening” is taken from the United States pharmacopoeia, from whence the formula for it is derived, and is simply a descriptive name like “capsicum,” “aconite,” or “mercurial.” The suggestion with regard to the blister plasters, that when the directions *1000 .are followed they never fail to act, whether intended as a commendation or a warning, is not worthy of account. And the belladonna plasters, which are advertised as “touching the spot,” of which something was made at the argument, are not, as I understand it, the particular belladonnas involved in this suit, and it is not necessary to consider, therefore, how far this would amount to a condemning puff.
To the final objection that some of the plasters, such as the “capsicum,” have the initials “J. & J.” imprinted in repeated squares or circles on their back, from which it is argued that they are thereby withdrawn from competition, the easy answer is, that this, like the “red cross,” gives the plaintiffs no monopoly in the character or composition of 'the plasters, but only prohibits others from holding out similar goods as of their make. It stamps them as of the plaintiffs’ manufacture, and that is all.
Being of the opinion, therefore, that the plaintiffs are entitled to recover, judgment is directed to be entered in their favor in the sum of $2,439.65, being the amount of internal revenue taxes improperly collected by the defendant, with interest from March 1, 1899, to this date.
NOTE. In Grommes v. Seeberger (C. C.) 41 Fed. 32, under tbe customs act of March, 1883, 22 Stat. 488, c. 121, “Pepsin Bitters” were held dutiable by Judge Blodgett, as a proprietary article or preparation, being protected by a trade-mark.
In Re Eisner (C. C.) 54 Fed. 671, Johann Hoff Malt Extract was also held dutiable as a proprietary medicine under the act of October 1, 1890, 26 Stat. 567, c. 1244, by Coxe, J., but he was reversed, however, by the Court of Appeals, 8 C. C. A. 148, 59 Fed. 352.
And under the war revenue act, Act June 13, 1898, 30 Stat. 456, c. 448, under discussion in the principal case, it was decided in United States v. Brewing Co. (C. C. A.) 121 Fed. 41, by the Court of Appeals of the Eighth Circuit, that a mild form of beer known as “J. D. Eiler’s Rochester Tonic,” was taxable as a medicinal proprietary article.
In United States v. Stubbs (D. C.) 91 Fed. 608, also under the war revenue act, it was held by Brown, J., contrary to the opinion expressed by Judge Dallas in J. Ellwood Lee Co. v. McClain (C. C.) 106 Fed. 164, that the word “compounded” used in the act was to be understood in a pharmaceutical sense; hence that drugs, chemically compounded so as to form a single though complex substance, were not within the act.

 Specially assigned.

 Act June 13, 1898, 30 Stat. 456-462, c. 448 [U. S. Comp. St. 1901, p. 2297]:
“Sec. 20. That on and. after the first day of July, 1898, any person, firm, company, or corporation that shall make, prepare and sell, or remove for consumption or sale, drugs, medicines, preparations, compositions, articles, or things, including perfumery and cosmetics, upon which a tax is imposed by this act as provided for in Schedule B, without affixing thereto an adhesive stamp or label denoting the tax before mentioned, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall pay a fine of not more than five hundred dollars, or be imprisoned not more than six months, or both, at the discretion of the court: provided, that no stamp tax shall be imposed upon any uncompounded medicinal drug or chemical, nor upon any medicine sold to or for the use of any person which may be mixed or com *996 pounded for said person according to the written recipe or prescription of any practicing physician or surgeon, or which may he put up or compounded for said person by a druggist or pharmacist selling at retail only. The stamp taxes provided for in Schedule B of this act shall apply to all medicinal articles. compounded by any formula, published or unpublished, which are put up in style or manner similar to that of patent, trade mark or proprietary inedicine in general, or which are advertised on the package or otherwise as remedies or specifics for any ailment, or as having any special claim to merit, or to' any peculiar advantage in mode of preparation, quality, use, or effect.”
“Schedule B. Medicinal Proprietary Articles,” etc. “Medicinal proprietary articles and preparations: Por and upon every packet, box, bottle, pot, or phial, or other inclosure, containing any pills, powders, tinctures, troches or lozenges, sirups, cordials, bitters, anodynes, tonics, plasters, liniments, salves, ointments, pastes, drops, waters (except natural spring waters), essences, spirits, oils, and all medicinal preparations or compositions whatsoever, made and sold, or removed for sale, by any person or persons whatever, wherein the person making or preparing the same has or claims to have any private formula, secret, or occult art for the making or preparing the same, or has or claims to have any exclusive right or title to the making or preparing the same, or which are prepared, uttered, vended, or exposed for sale under any letters patent, or trade mark, or which, if prepared by any formula, published or unpublished, are held out or recommended to the public by the makers, venders or proprietors thereof as proprietary medicines, or medicinal proprietary articles or preparations, or as remedies or specifics for any disease, diseases, or affection whatever affecting the human or animal body.” 30 Stat. 462, c. 448.

 Act July 1, 1862, § 107, 12 Stat. 478: “* * * Provided that nothing in this section contained shall apply to any uneompounded medicinal drug or chemical, nor to any medicine compounded according to the United- States or other national pharmacopoeia, nor of which the full and proper formula is published in either of the dispensatories, formularies, or text-books in common use among physicians and apothecaries, including homceopathic and eclectic, or in any pharmaceutical journal now used by any incorporated college of pharmacy, and not sold or offered for sale, or advertised under any other name, form or guise, than that under which they may be severally denominated and laid down in said pharmacopoeias, dispensatories, text-books, or journals, as aforesaid, nor to medicines sold to, or for the use of, any person, which may be mixed and compounded specially for said persons, according to the written receipt or prescription of any physician or surgeon.”

 Rev. St. § 3436: “No stamp tax shall be imposed upon any uncompounded medicinal drug or chemical, nor upon any medicine compounded according to the United States or other national pharmacopoeia, or of which the full and proper formula is published in any of the dispensatories now or hitherto in common use among physicians or apothecaries, or in any pharmaceutical journal now issued by any incorporated college of pharmacy, when not sold or offered for sale, or advertised under any other name, form or guise than that under which they may be severally denominated and laid down in said pharmacopoeias, dispensatories, or journals as aforesaid; nor upon medicines sold to or for the use of any person, which may be mixed and compounded for said person according to the written receipt or prescription of any physician or surgeon. But nothing in this section shall be construed to exempt from stamp-tax any medicinal articles, whether simple or compounded by any rule, authority, or formula, published or unpublished, which are put up in a style or manner similar to that of patent or proprietary medicines in general, or advertised in newspapers or by public handbills for popular sale and use, as having any special proprietary claim to merit, or to any peculiar advantage in mode of preparation, quality, use, or effect, whether such claim be real or pretended."

 No opinion filed.