KINNEY v. The ALHAMBRA. See Case No. 192.

---

## Case No. 7,826.

### KINNEY v. ALLEN et al.

[4 Am. Law T. Rep. (N. S.) 258; 1 Hughes, 106; Cox, Manual Trade-Mark Cas. 311; 23 Int. Rev. Rec. 224.]

Circuit Court, E. D. Virginia. May, 1877.

##### TRADE-MARKS—NUMERICAL SYMBOL.

1. The numerical symbol ½, printed in large, bold, red characters, in a certain form and style, had been used since 1873 by the complainant as one of his trade-marks on the packages and boxes of certain classes of cigarettes manufactured by him, and was registered in the United States patent office, in June, 1875. This symbol was originally employed to indicate the idea that the cigarettes were composed of two kinds of tobacco in the proportion of half and half; but except so far as it indicates this idea, which it does not really express, it is a merely arbitrary device.

2. On a bill brought to enjoin against another's use of this symbol: *Held*, that the complainant had not a right to the exclusive use of the numerical character ½, written in any ordinary manner; but that he had a right to the exclusive use of it in the particular form, size, color, and style in which he had used and registered it.

[Cited in N. K. Fairbank Co. v. Central Lard Co., 64 Fed. 136.]

[Cited in Lawrence Manuf'g Co. v. Lowell Hosiery Mills, 129 Mass. 327.]

In equity. This was a suit [against Allen & Co.] to restrain the infringement of a trademark. The trade-mark consisted of a representation of one-half, and had been duly registered in the patent office of the United States, pursuant to the Revised Statutes. The following is a fac-simile of it as shown by the proofs:

Cox & Cox, for complainant.

The defences relied upon are as follows: (1.) That the symbol is not a trade-mark because it is composed of numerals. (2.) That the symbol is not a trade-mark because it is descriptive. (3.) That, even if the symbol is a trade-mark, it has not been infringed, because the respondents' labels as wholes are entirely unlike complainant's.

1. A numeral or numerals may be used for a trade-mark. That a word or words may be employed as a trade-mark has long been settled law. It is submitted that it necessarily follows that a numeral or numerals may be. A word is the expression of a concept or idea. The word "ten" and the numeral 10 are essentially the same as vehicles of a concept. They are unlike only as "idem" and "same" are unlike. "1805 Brandy" would not be sustained for the same reason that "Eighteen Hundred and Five Brandy" would not; because both would necessarily express a fact concerning the date of production of the article. But "Five Fifty-Five Brandy" would be good in law, and for the same reason "555 Brandy" would, it is submitted, be open to no objection. And, it may be added, if a manufacturer used "555" for one quality, "666" for another, and "777" for a third, they would all be equally valid as arbitrary expressions of an idea. As far as any principle is involved, therefore, there is no difference between numerals and words. The adjudged cases are to the effect that numerals may be employed as trade-marks. Gillott v. Esterbrook, 47 Barb. 455; Dawes & Fanning Case, Dec. Com. Pat. 1872.

2. The symbol as used by the complainant is not descriptive. The evidence shows that it has been used upon cigarettes made of two and three kinds of tobacco. Its office is the same as that of any other brand or trademark. The complainant manufactures a "St. James," which is made of one kind or mixture of tobacco; a "Caporal," which is made of another kind or mixture; and "Alexis," which is made of another kind or mixture, and so on. One of the incidental qualities of each of these different designations is that it signifies a particular kind of tobacco or mixture. "St. James" has been applied to a cig-

arette of perique; "Caporal" to a cigarette of perique and Virginia; and "Alexis" to a cigarette of other tobaccos. Because these terms have been so applied, and have, when used on cigarettes of Kinney's manufacture, a distinct and indisputable reference to the ingredients of which the cigarettes are composed, they are none the less valid trade-marks. Because "St. James" has been invariably and continuously used on perique cigarettes by Kinney, and, as used by him, is synonymous with perique, it by no means follows that others may use "St. James" upon perique cigarettes. In brief, "St. James" does not mean simply perique cigarettes, but perique cigarettes made by Kinney, and any use of the word "St. James" in connection with cigarettes is a representation that they are (1) made of perique, and (2) made by Kinney. If, then, it be conceded that the symbol of one-half, as used by the complainant, has been invariably applied to cigarettes made of mixed tobacco, it is not a sequitur that the respondents have a right to use it. In contemplation of law, upon such an assumption, the particular symbol means (1) cigarettes made of mixed tobacco, and (2) cigarettes made by Kinney. It is confidently submitted, therefore, that any defence based on the circumstances that the mark may have been used only upon cigarettes made of mixed tobacco, is without force.

The material inquiry then becomes, is the red symbol ½, arranged as shown, descriptive? The adjudged cases establish that a word is not a trade-mark, on account of its being descriptive, only when it is such by reason of its etymological relation to the article in connection with which it is employed. To be descriptive it must point directly to some quality or property of the goods. It must be an intelligible statement of a fact. It must communicate from its etymological nature, not by association or inferentially, some truth concerning the goods. Either this, or it must have come to be descriptive by public use as a term of art or trade. Thus "Navy" as applied to tobacco, and "Pig" as applied to iron, are descriptive terms by reason of common use. Both were once valid trade-marks, and yet both were originally used just as the symbol ½ is alleged to have been used by the complainant. The originator of pig iron made an article of particular properties. The term was arbitrarily applied, but fell into general use, and so became descriptive. Perhaps a century hence a red one-half will be equally descriptive; but to-day it is just where the term "Pig" was when it was first used by its originator, and pointed to his production of iron. The symbol, as used by the complainant, has in itself no meaning whatever. What does it mean to the court when it is observed on a package of cigarettes? It is absolutely meaningless. The sole conception is that it is a symbol denoting one-half. Nothing beyond this is communicated to the mind. Everything else is

conjecture. It may relate to price, or to ingredients, or to size, or to quality. It may mean that half the cigarettes are of one kind, and half of another, or that half-rate tobacco is used. It may mean any or all of these, and meaning any or all, it is not descriptive. It signifies a fact only at most, when there is one-half of something, but what that something may be it does not and cannot denote. As a consequence, it is not in any right sense descriptive. It is not a synonym of "mixed," and can only become such by common use. It may mean mixed on Kinney's goods, just as "St. James" means perique, but it does not, apart from Kinney's use of it, mean anything. It is, in brief, an arbitrary sign or mark used to denote a particular class of goods made by a particular person. It is a trade-mark.

3. But it is urged that even if the symbol is a trade-mark, it has not been infringed, because the respondents' labels as wholes are entirely unlike complainant's. There is no contention on the part of the complainant, that the labels as wholes are so nearly similar as to be likely to be mistaken. The case is purely a trade-mark case, the infringement consisting in the application of that which complainant insists is used to distinguish his goods, as a specific mark or symbol. In respect of infringement, it is said by the supreme court of the United States, in the case of Canal Co. v. Clark, 13 Wall. [80 U. S.] 311: "The first appropriator of a name or device, pointing to his ownership, or which by being associated with articles of trade, has acquired an understood reference to the originator or manufacturer of the articles, is injured when another adopts the same mark or device for similar articles, because such adoption is in effect representing falsely that the productions of the latter are those of the former." The language of the statute is: "Any person who shall reproduce, counterfeit, copy, or imitate any recorded trade-mark, and affix the same to goods of substantially the same descriptive properties, shall be liable to an action," etc. There can be no doubt, therefore, that the question of whether the labels are generally similar is immaterial. The distinctions of the present case are unquestionably nice, but it is thought that a critical examination must necessarily lead to the conclusion that the law is with the complainant.

John O. Steger, for respondents.

The complainant testifies that he has used the figures "½" on two brands of his cigarettes, the "St. James" and the "Caporal," as early as June, 1871, and the fact is not denied. He further testifies that he so used them as a trade-mark. This is denied, and is clearly disproved by the evidence. The complainant commenced using the Turkish cap and the "½" on the same day for a particular purpose, and that was, to mark a particular kind of goods. That the "St. James" and the "St. James ½" were commenced about the

same time, but the "St. James" was the first. The "St. James" cigarettes were made of perique tobacco, and the "St. James ½" were made of one-half perique, and one-half Turkish. Upon each of these brands the complainant affixed a label containing the words "St. James," and his name, and also, his unquestioned trade-mark, the Turkish cap. If the "½" was designed by him to designate the origin or ownership of the article, what reason was there for affixing it upon a label which already had two trade-marks upon it and also his own name? On the other hand, if he designed to make another kind of cigarette, composed one-half of perique and the other half of some other kind of tobacco, it would be appropriate, convenient, and economical to use the "St. James" label, and distinguish the difference in the cigarettes by the figures "½," meaning thereby that the cigarettes thus marked contained only ½ perique tobacco. The "Caporal" cigarettes were made of Turkish and Virginia tobacco; the "Caporal ½" were made of Turkish, Virginia, and perique, in what proportions we are not informed, but it is fair to presume that they contained ½ of Turkish and Virginia, and ½ of perique, as "Caporal" was of Turkish and Virginia. Every box and package of cigarettes made by the complainant informed the trade that the Turkish cap was his trade-mark, and his showcards and price lists, which were distributed to dealers, showed the composition of his various brands of cigarettes, and in some instances informed them that the "cap" was his trade-mark, and he never in any way whatever, informed the trade that the "½" was claimed by him as a trade-mark, although he had already sued several persons for violating it. And it was the understanding of the trade that he affixed the ½ on the St. James and Caporal simply to designate that the cigarettes thus marked contained only one-half of the same tobacco as the cigarettes marked "St. James" and "Caporal." The complainant never used the ½ except upon cigarettes made of mixed tobaccos. He made other cigarettes of mixed tobaccos, for which he had different names and different labels, upon which he did not put the ½, for the simple reason that it was not necessary to do so to distinguish them. But when he used the same labels for different kinds of cigarettes it was necessary to distinguish them.

The complainant did not originally intend to use the "½" as a trade-mark, but only to distinguish one brand of "St. James" from another, and one brand of "Caporal" from another. If he did, how can it be explained that although the ½ was imitated and used by other manufacturers for four years past, he did not register it sooner or take any steps to inform the trade that it was his trade-mark, as he did with regard to the Turkish cap and his other trade-marks? Nor will it avail him to urge, that on the 8th

of June, 1875, he certainly did avow that intention, and from that time he is entitled to it as a trade-mark. For at that time, according to his own depositions, it was used by other manufacturers to distinguish their various brands of cigarettes, whom he had sued or was then suing for its infringement, and it had become known to the trade as a mark indicating the composition or kind of cigarette, and not as indicating origin or ownership. Even if the figures ½ could be exclusively appropriated as a trade-mark, the complainant has not so used them, and cannot now claim them as such. In the leading case of Amoskeag Manuf'g Co. v. Spear, 2 Sandf. 599, it was held "that no one has an exclusive right to the use of any words, letters, figures, or symbols, which have no relation to origin or ownership of the goods, but are only meant to indicate their name or quality. No one can appropriate a sign or symbol which, from the nature of the fact which it is used to signify, others may employ with equal truth, and therefore have an equal right to employ for the same purpose." This case has been recognized and followed in numerous cases ever since the decision was rendered in 1849. It was expressly approved in Canal Co. v. Clark, 13 Wall. [80 U. S.] 311; Burke v. Cassin, 45 Cal. 467; Town v. Stetson, 5 Abb. Pr. (N. S.) 218; Stokes v. Landgraff, 17 Barb. 608; Caswell v. Davis, 58 N. Y. 223; Taylor v. Gillies, 59 N. Y. 331; Wolfe v. Goulard, 18 How. Pr. 64; Choynski v. Cohen, 39 Cal. 501; Falkinburg v. Lucy, 35 Cal. 52; Canal Co. v. Clark, 13 Wall. [80 U. S.] 311; Glen & Hall Manuf'g Co. v. Hall, 6 Lans. 158; Corwin v. Daly, 7 Bosw. 222; Boardman v. Meriden Britannia Co., 35 Conn. 402; Gillott v. Esterbrook, 47 Barb. 455.

The bill should be dismissed with costs.

HUGHES, District Judge. The complainant is a manufacturer in New York of cigarettes of several varieties, which are in very popular use. On certain classes of the packages and boxes in which he makes them up for market he places, amongst other trademarks, an Eastern fez, surrounded by rays of light; and also the numerical symbol ½, printed in bold characters, in red color, with the bar between the two figures oblique and nearly upright; with the figure 1 elevated on the left; with the figure 2 depressed on the right; the symbol as a whole being of such size that the circumference of a circle having a radius of five-eighths of an inch will just include all of its points. This character of ½ as just described has been used by the complainant on certain of his cigarettes since 1873, and he applied for its registration in the patent office of the United States in May, 1875.

Shortly before this last-named date, that is to say, in April, 1875, the respondents began to manufacture cigarettes in Richmond similar to those of the complainant, and to

put some classes of them up for market in packages and boxes similar to those used by the complainant, and to stamp some of the boxes and packages, amongst other devices, with this same numerical character ½ in broad, scarlet, red color, with the dividing bar oblique and nearly upright, and of size identical with the same character as used by the complainant. The latter complains that this is an infringement of his right to the exclusive use of this trade-mark, and files his bill praying for a perpetual injunction forbidding the use of it by the respondents. It would seem that the original idea of the complainant in using this character ½ on certain of his wares, was to indicate that the cigarettes stamped with it were made up of two kinds of tobacco, in the proportion of half-and-half. The numerical character does not express such an idea; it is not the term which a person accustomed to the use of accurate language would employ for the purpose of expressing it; but yet it must be admitted that it does in some sort indicate the idea, and is not an absolutely arbitrary symbol. It is only because of the fact that the character does indicate the idea of half-and-half, but does not express it, that any confusion attends this case. If the use by the complainant of the numerical character ½ was absolutely arbitrary, there could be no question of his exclusive right to use it stamped in any form upon his goods. But where, on the other hand, a character or word is the one in general use for describing the quality or kind of goods on which it is placed, the books are full of authorities showing that such character or word ordinarily used cannot be appropriated by any one manufacturer, and that the most he can acquire by long usage, or by statutory registration, is the right of using the character or word printed or painted in some special form not in ordinary use. The cases reported on this head are so numerous and emphatic that it is needless to cite them.

There are, therefore, but two questions arising in the present case as to this numerical character ½.

1. The first is, its use by the complainant being in a critical sense merely arbitrary, as only indicating but not expressing the idea of half-and-half, but not absolutely arbitrary in a popular sense,—whether or not complainant has a right to an injunction prohibiting the use by others of the character in any form on wares similar to his own. On the general principle that exclusive privilege, in prejudice of general right, ought not to be upheld in cases of nicety and doubt, I think it most proper not to grant a general injunction.

2. The next question is, whether the complainant has a right to the exclusive use of this trade-mark in the form, size, color, and style, in which he has used it upon his wares since 1873, and in which he registered it in 1875. Upon the authority of cases numerously reported, and upon principles well established, I decide that he has such a right, and will so decree, and will insert in the decree an imprint of the character ½ in the form, size, color, and style, in which an exclusive use upon his cigarettes is affirmed to the complainant.