HUMPHREYS' SPECIFIC HOMEOPATHIC MEDICINE CO. *v.* WENZ.

*(Circuit Court, D. New Jersey.* November 24, 1882.)

1. TRADE-MARK—NUMBERS.

Numbers constitute a lawful trade-mark when they indicate origin or proprietorship, and are used in combination with words and other numerals.

2. SAME—WORDS.

The words "homeopathic specifics," standing alone, cannot be appropriated as a trade-mark; but can be when used in connection with serial numbers.

3. NUMBER ALONE MAY BE EMPLOYED.

The complainant was the first to adopt such a method of putting up homeopathic medicines, and by reason thereof certain specific remedies have come to be known in the trade by numbers alone.

4. SAME—VIOLATION BY IMITATION OF.

The use of another name, such as " Reeves' improved," in place of " Humphreys'," before the words " homeopathic specifics," does not take the defendant out of the class of imitators; such prefix does not meet the difficulty, as the remedies are purchased by the public by the numbers alone, and the defendant has made use of such numbers.

5. RESEMBLANCE—INTENT TO DECEIVE AND MISLEAD.

If the resemblance is such as not only to plainly suggest an intention to deceive, but is calculated to mislead the public, who are purchasers of the article, and thus to injure the sale of the goods of the proprietor of the original device, the injured party is entitled to redress.

In Equity.

*A. J. Todd* and *A. Q. Keasbey,* for complainant.

*J. Frank Fort,* for defendant.

NIXON, D. J. The bill of complaint filed in the above case alleges that the complainant is a corporation, organized under the laws of the state of New York, by the name and title of "The Humphreys' Specific Homeopathic Medicine Company;" that for upwards of 20 years past it has manufactured and sold a series of 35 homeopathic specific medicines or remedies, which have been put up in bottles containing thereon labels and wrappers having printed thereon the words "homeopathic specific," in connection with numbers in a series, and particular reference to diseases or infirmities for which the medicines in the bottles are intended as specifics; that the complainant's designation of said series of homeopathic specific medicines is by the words "homeopathic specific," and by numbers in a series as follows: No. 1, fever, congestion, inflammations; No. 2, worm fever or worm disease; No. 3, colic, crying, and wakefulness of infants; No. 4, diarrhœa of children and adults; No. 5, dysentery, gripings, bilious colic; No. 6, cholera, cholera morbus, and vomiting; No. 7, coughs, colds, hoarseness, bronchitis; No. 8, toothache, face-ache, neuralgia; No. 9, headache, sick headache, vertigo; No. 10, dyspepsia, biliousness, costiveness; and so on, upwards, in the same serial order, to 35; that by reason of the use of numbers in serial order, in connection with the words "homeopathic specific," the books and pamphlets of the complainant, descriptive of its homeopathic specifics, and the directions therein contained relating to their use, could be referred to by the defendant in the sale of his "homeopathic specifics," and such books could be used with the defendant's medicines to a large extent in the treatment of diseases, with the serial order of specifics put up and sold by him, equally as well as with the serial order of specifics put up and sold by the complainant.

The bill further claims that the complainant was the first to use specifics in homeopathy, and the first to adopt the term "homeopathic specifics," and to use in connection with these words numbers to designate the medicines and the diseases for which such medicines are intended as specific; that such adoption is not descriptive, but denotes origin and ownership; that the use of said numbers in connection with these words it wholly arbitrary, as symbols to denote origin and ownership; that such use has become so acknowledged and acquiesced in by the public that the specifics are now known by numbers only, and are ordered and called as such, instead of by the names of the particular complaints or diseases or remedies therefor; and that it medicines thus put up in bottles labeled as "homeopathic specifics," and numbered in series, have acquired a high reputation throughout the United States and have commanded and still command an extensive sale, and have become a great source of profit to the complainant.

The charge is that the defendant has infringed the complainant's trade-mark by taking bottles of about the size of complainant's, putting labels thereon, and printing in conspicuous letters the words "homeopathic specifics," and numbering the series from 1 to 40, as the complainant's are numbered from 1 to 35; that in regard to the most usual remedies for the most common complaints or diseases he has adopted the same numbers for the same diseases, that complainant has used for many years; and that the effect of such imitations is to deceive the public by making purchasers believe, when buying the specifics of the defendant, that they are obtaining the complainant's remedies.

An application is now made for an injunction to restrain the defendant, *pendente lite*, from the continued use of such labels in connection with numbers.

The case presents an interesting question. A trade-mark is any proper mark by which goods and wares of the owner or manufacturer are known in the trade. Courts of equity have two objects in view in granting injunctions against their imitation: (1) To secure to the individual adopting one the profits of his skill, industry, and enterprise; (2) to protect the public against fraud. There are limitations upon the devices or symbols that may be adopted. To be lawful they must have reference to origin or ownership, and not to quality. They must not be of such a character that their use will give a monopoly in the sale of any goods other than those produced by the person

who invokes the protection of the court. Mere numbers are never the objects of a trade-mark, where they are employed to indicate quality, but they may be where they stand for origin or proprietorship, in combination with words and other numerals. These principles are elementary, and have been stated in order to test the case by them.

It cannot be successfully maintained that the words "homeopathic specifics," standing alone, can be appropriated by any one as a trade-mark; they are too broad, and if allowed would give the taker a monopoly in a school of medicine which Hahnemann, its founder, threw open to all disciples. *Canal Co.* v. *Clark*, 13 Wall. 311.

A "specific" in medicine, says Dunglison, is a substance to which is attributed the property of removing directly one disease rather than any other. A "homeopathic specific," therefore, is a remedy pertaining to homeopathy which exerts a special action in the prevention or cure of a disease. The name can no more be appropriated, and is no more the property of Humphreys, than any other practitioner of the homeopathic system of therapeutics. But I do not understand that the complainant's solicitor claims this. What is contended for is the right to use these words in connection with serial numbers. Humphreys was the first to adopt such a method of putting up homeopathic medicines, and the proof is that certain specific remedies for particular complaints or diseases have come to be known in the trade by the number which he adopted to designate them; that the defendant has in several instances applied the same numbers to the same remedy; and that such an imitation is calculated to impose upon unwary purchasers, who are in the habit of buying Humphreys' specifics by the numbers with which he indicates them.

The defendant insists that the use of the words "Reeves' improved" before "homeopathic specifics," takes him out of the class of imitators or infringers, as they sufficiently reveal to purchasers that they are not getting Humphreys' remedies; but that prefix to "specifics" does not meet the difficulty, which is that some of these remedies are purchased by the public by numbers, and that he has copied the complainant's numbers for the same alleged specifics. Besides, it is now well settled that to entitle the proprietor of a trade-mark to relief, or to establish a case of infringement, it is not necessary to show that the imitation is exact in all particulars. If the resemblance is such as not only to plainly suggest an intention to deceive, but is calculated to mislead the public, who are purchasers of the article, and thus to injure the sale of the goods of the proprietor of the orginal device, the

injured party is entitled to redress. *Walton* v. *Crowley*, 3 Blatchf. 440.

It is difficult to believe that there was no intention to deceive in this case, although the defendant swears that adopting the same numbers which Humphreys has used was purely accidental. He states in his affidavit "that the names of diseases claimed to be cured by the remedies of the defendant are different by the numbers from those of the complainant, and that whatever similiarity there may be in diseases and numbers arises from accident and not intention."

Humphreys' specifics for fevers, diarrhea, colds, dyspepsia, rheumatism, whooping-cough, gravel, nervous debility, urinary difficulties, painful menses, and epilepsy, are respectively numbered, 1, 4, 7, 10, 15, 20, 27, 28, 30, 31, and 33. The defendant has printed his list with the same diseases or complaints designated by precisely the same numbers. If this was accident and not intention it is one of the most remarkable coincidences that ever occurred, and is a serious tax upon human credulity.

A preliminary injunction must issue against the defendant, restraining him from using the above numbers, in connection with the remedies for the above diseases or complaints, until the further order of the court.

See *Burton* v. *Stratton*, 12 FED. REP. 696, and note, 704; *Shaw Stocking Co.* v. *Mack*, Id. 707, and note 717; *Ginter* v. *Kinney Tobacco Co.* Id. 782; *Wm. Rogers Manuf'g Co.* v. *Rogers Manuf'g Co.* 11 FED. REP. 495; *Singer Manuf'g Co.* v. *Riley*, Id. 706; *Hostetter* v. *Adams*, 10 FED. REP. 838.