DENNISON MFG. CO. v. SCHARF TAG, LABEL & BOX CO.

(Circuit Court of Appeals, Sixth Circuit.  February 7, 1905.)

No. 1,338.

TRADE-MARKS—SERIES OF NUMBERS USED TO DESIGNATE STYLE OF GOODS—
    UNFAIR COMPETITION.

Series of numbers used by a manufacturer of labels in its catalogues and in connection with its corporate name on the boxes containing its labels, not primarily to indicate origin, but to designate the color, shape, and size of the label, each kind being given a different number, do not in themselves constitute good trade-marks, and such manufacturer is not entitled to an injunction to restrain the use of the same numbers in the same way and for a similar purpose by another in connection with its own name, either on the ground of infringement of trade-mark or of unfair competition, there being no attempt to deceive in dress or style of package, and the labels themselves being such as it is open to any one to make.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trade-Marks and Trade-Names, §§ 9, 22, 74, 82, 83.

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

This is a second appeal.  The former was from a decree sustaining a plea of res adjudicata and dismissing the bill.  That decree we reversed for reasons appearing in our opinion reported under same style in 121 Fed., at page 313 et seq., 57 C. C. A. 9.  When the case was remanded the defendant filed a demurrer.  This was irregular after the former plea.  But no objection was made below and no error assigned here.

Briefly, the object of the bill is to restrain the defendant company from using a certain series of numbers in connection with the sale of a series of labels for jars and bottles, upon the ground that their use by the defendant constituted an infringement of complainant's exclusive right in said numbers in connection with the sale of such labels as valid common-law trade-marks, and also because, whether technical trade-marks or not, their use by the defendant in connection with labels like those made and sold by complainant constituted unfair competition.  The demurrer interposed went upon the ground that no case was stated for relief upon either ground of the bill.

Both complainant and defendant are makers of labels and tags.  One class of labels made by complainant are intended for use on jars and bottles. They are made in many styles and sizes.  One such class has a red border and is made in seven sizes or shapes.  These are designated by a series of numerals, namely 2,001, 2,002, 2,003, 2,004, 2,005, 2,006, and 2,007.  Their size, shape and color are shown by a page from complainant's catalogue here set out.[1]

It is charged that defendants make and sell labels of a like kind and use the same series of numbers in connection with their sale.  Touching the purpose for which complainants have used this series of numbers the bill avers "that its said numbers, all and singular, have been used and availed of in the same way from the first, each number having been continuously and always employed in connection with a label having a red border and of a particular size and shape, and that each number has continuously and always, in addition to giving notice of and indicating the origin of the label

[1] The red border is printed in black ink in the exhibits herewith.

135 F.—40

as being your orator's manufacture, given notice of and indicated the color of border, size, and shape of the label."

The double use thus averred is illustrated by the next paragraph of the bill, where it is averred: "That in the purchase and sale of its said labels the different numbers aforesaid indicating origin, color of border, size, and shape have been and are used by consumers and the trade. For instance, a consumer desiring a 'Dennison' label having a red border and of particular size and shape will make use of the designation '2,001,' and a consumer desiring a 'Dennison' label having a red border and of another size and shape will ask for and use the expression '2,002,' and so on as to all the other numbers hereinbefore mentioned and referred to as your orator's numbers and trade-marks. And your orator further says that it is and has long been a custom, for many years observed, for each manufacturer of labels like those hereinbefore mentioned, as well as each manufacturer of steel pens, pencils, buttons, ornamental nails, and other articles which are necessarily made in a great many different sizes, shapes, and styles, to prepare and use as his trade-marks or designations a series of numbers or marks in the way in which your orator's said numbers or marks have been by it used, as hereinbefore explained, which custom had its origin in the necessities of trade, and has been and is of essential and fundamental importance, and

which has long been an established custom and observed in the trade to which the labels of your orator and those of the defendant appertain." Though not clearly stated, it is inferable that those numbers do not appear upon the labels themselves, but only upon the outside of packages containing them and in illustrated catalogues. That the seven numbers here involved do not comprise all of the numbers used and claimed as trade-marks is made evident by an averment that many other numbers are claimed to distinguish and identify other of its labels and tags in addition to those here in issue, and that its rights in respect of such other numbers is not waived by limiting its bill in this case to a particular set of numbers.

Archibald Cox, for appellant.

James Whittemore, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

Combined with a name, a word, or some other sign or symbol a numeral may well become a vital part of a valid trade-mark. This is as far as the cases cited by appellant actually go. Boardman v. Meriden Britannia Co., 35 Conn. 402, 95 Am. Dec. 270; Lawrence Mfg. Co. v. Lowell Hosiery Mills, 129 Mass. 325, 37 Am. Rep. 362; Shaw Stocking Co. v. Mack (C. C.) 12 Fed. 707, 712; Humphreys Specific Co. v. Wenz (C. C.) 14 Fed. 250; Gillott v. Esterbrook, 48 N. Y. 374, 8 Am. Rep. 553; Humphrey's Specific Co. v. Hilton (C. C.) 60 Fed. 756.

But the contention here is not for a numeral in connection with a sign, symbol, or word, but for a bare numeral. Neither do the complainants limit their claim to one number as an arbitrary sign signifying origin, but for a multitude of numbers, where each number is used only in connection with a particular article of manufacture. A trade-mark must be designed and used to give notice of origin or ownership.

In Deering Harvester Co. v. Whitman & Barnes Co., 91 Fed. 376, 380, 33 C. C. A. 558, we said:

"The essential thing is that it shall be designed and used to indicate the origin of the article, and that all articles having the same mark come from a common source."

It must, by its own intrinsic qualities or by association, point distinctly to the origin or maker of the thing to which it is applied, and if it does not do this it falls short of the purpose of such a short trade-name. "The reason of this is," said the court in Canal Co. v. Clark, 13 Wall. 311, 323, 20 L. Ed. 581, "that unless it does neither can he who first adopted it be injured by any appropriation or imitation of it by others, nor can the public be deceived." Mfg. Co. v. Trainer, 101 U. S. 51, 54, 25 L. Ed. 993. See, also, Mill Co. v. Alcorn, 150 U. S. 460, 463, 14 Sup. Ct. 151, 37 L. Ed. 1144.

By long use numerals have come primarily to be signs of descriptions, and when designed to indicate origin they have, so far as the reported cases go, been used in connection with a name, or word, or some arbitrary or fanciful sign or symbol, or have been printed in some peculiar style or form distinguishing it from ordi-

nary numerals. Humphreys Specific Co. v. Hilton (C. C.) 60 Fed. 756; Browne, Trade-Marks, § 225. Thus, in Kinney v. Allen, 1 Hughes, 106; s. c., 14 Fed. Cas. 608—the numeral symbol "½" printed in large, bold red characters, in a certain form and style, was held entitled to protection as a trade-mark when so printed, but that the same numeral printed in ordinary manner was not an infringement.

In Humphreys Specific Co. v. Wenz (C. C.) 14 Fed. 250; Boardman v. Meriden Britannia Co., 35 Conn. 402, 95 Am. Dec. 270; Lawrence Mfg. Co. v. Lowell Co., 129 Mass. 325, 37 Am. Rep. 362; and Shaw Stocking Co. v. Mack (C. C.) 12 Fed. 707—the trade-mark protected was a number in combination with other words, signs, or symbols, the numeral being only a part of the general design.

Gillott v. Esterbrook et al., 48 N. Y. 374, 8 Am. Rep. 553, comes nearer supporting the contention that a bare number is capable of being a valid trade-mark than any other case to which we have been cited. Yet the case is far from going to such an extreme. The case belongs rather to the line of unfair competition cases than to the technical trade-mark cases. The numeral "303" stamped on Gillott's pens was, said the court, "selected and used by the plaintiff as his trade-mark, to indicate, in connection with his name, the origin and ownership of the said pens so manufactured by him, and not to designate their quality merely, and that the defendants, by the adoption thereof, have done it in fraud of his rights, and the plaintiff, upon all the facts found by the judge, was entitled to the injunction granted." Now, the facts found were that the Gillott pen was of peculiar style or pattern, on which was impressed the number 303, and the words "Joseph Gillott, Extra Fine." These pens were put up in black paper boxes holding one gross each, on the top of which was a label, in the center whereof is the plaintiff's name in larger letters than either prints thereon, and above the name is No. (meaning number), and below it in large and conspicuous type are the said numerals 303. The court found that the pen made by the defendant "in size, shape, color, pattern, flexibility, and firmness of point so closely resembles the said pen of the plaintiffs as to require an expert to distinguish them in those respects." And that defendants had also "impressed upon their pen the said numerals 303, and the name of the defendants' firm, Esterbrook & Co., and the same words, "Extra Fine," as upon the said pen of the plaintiff. It was also found that the defendants put their pens in boxes similar in design and print as that of the plaintiff, and that on the bottom of the box was the word "Caution," as upon the box of the plaintiff. Thus it is apparent that there was a close imitation of the pen, marking, package, and label of the plaintiff, the name of the defendant alone distinguishing the product. Upon this showing we can readily understand why the New York Commissioners of Appeals might agree that "upon all of the facts found" the plaintiff was entitled to his injunction. But in the case before us the plaintiff's name is not used in connection with a number, or, if so, it is only used upon the outside of packages containing

blank labels; for the label itself, being such a label in size, color, and form as was open to anybody to make, contains neither a name nor a number.

We may also, from the language of the bill and admissions of counsel at the bar, infer that the defendant only uses the same numbers on the outside of packages and in catalogues in connection with its own corporate name. Thus we are confronted with the question whether plaintiff is entitled to protection against defendant's use of a bare number, when used in connection with its own corporate name.

The difficulty of using bare numbers for the purpose of pointing out the origin of the article to which they are attached has been more than once observed. Boardman v. Meriden Britannia Co., 35 Conn. 402, 95 Am. Dec. 270, and Lawrence Mfg. Co. v. Lowell Mills, 129 Mass. 325, 327, 37 Am. Rep. 362. But if it be difficult to give to a bare number the office of pointing out distinctly the origin of the article to which it is attached rather than some character, it is still more difficult to show that it was originally designed for that purpose.

But in this case all of these difficulties are magnified because the complainant has not adopted one sign, symbol, or numeral as an unchanging indicia of origin, but a multitude of arbitrary numbers, one such number being applied to each article made by it, which is distinguishable from like articles of its manufacture by reason of size, shape, color of border, or the purpose for which it was designed. Thus, if the numeral "2,001" is to be understood as pointing out the labels contained in the package to which it is attached as a label made by the Dennison Company, what would be the conclusion of one who saw another package bearing the number "2,002" and no more? Extend this system of distinguishing each style, color, and size of label by a separate numeral, and how is it possible that such a scheme can serve the office of designating the Dennison Company as the common source of origin? But that is precisely what the complainant insists it has done, and for such a multitude of numerals it is seeking protection as valid trademarks.

Complainant's counsel insist very strenuously that as this hearing is upon a demurrer the averments of fact in the bill are conceded, and in the printed brief it is urged that the opinion of the Circuit Court goes upon the theory that the numerals adopted by complainant are used descriptively, whereas the allegations of the bill are "that the numerals as a matter of fact do alone point to the origin of the articles." Undoubtedly a demurrer admits matters of fact well pleaded and all reasonable inferences to be drawn therefrom, but not mere arguments or conclusions of law as made or drawn by the pleader. Dennison Co. v. Thomas Co. (C. C.) 94 Fed. 651, 654. General averments of fact must be taken as qualified and limited by other statements, and especially by specific facts set out for the purpose of showing how and why this system of numerals is used. U. S. v. Des Moines Co., 142 U. S. 511, 544, 12 Sup. Ct.

308, 35 L. Ed. 1099; Chicot County v. Sherwood, 148 U. S. 529, 13 Sup. Ct. 695, 37 L. Ed. 546.

We have looked in vain for any clear and specific averment that complainant's numerals were originally designed as a mark of origin. Upon the contrary, the most specific averment is "that its said numbers, all and singular, have been used and availed of in the same way from the first, each number having been continuously and always employed in connection with a label having a red border and of a particular size and shape, and that each number has continuously and always, in addition to giving notice of and indicating the origin of the label as being your orator's manufacture, given notice of and indicated the color of border, size, and shape of the label." Here is a plain admission that these numerals were not designed solely to indicate origin, but that they were also designed to indicate the style, size, and color of a label. That a word or phrase or number incapable of exclusive appropriation as a trade-mark because of its descriptive character may come by association to have a secondary significance pointing to origin is true. But this will not make it a good trade-mark, though its use, in this secondary sense, by another in such way as to amount to a fraudulent effort to deceive and mislead the public into believing that the goods of one are the goods of another will, in a proper case, be restrained.

We have had occasion more than once to point out this distinction in respect of the rights of a complainant in the use of a word which by reason of its descriptive or geographical meaning was not subject to the exclusive appropriation of any one. Plant Co. v. May Co., 105 Fed. 375, 44 C. C. A. 534; Computing Scale Co. v. Standard Computing Scale Co., 118 Fed. 965, 967, 55 C. C. A. 459; Vacuum Oil Co. v. Climax Refining Co., 120 Fed. 254, 56 C. C. A. 90; Royal Baking Powder Co. v. Royal, 122 Fed. 337, 58 C. C. A. 499.

In Computing Scale Co. v. Standard Computing Scale Co., cited above, we said:

"If the complainant has a technical trade-mark in the word 'computing,' its use by others will be restrained, for a wrongful intent in so using it will be presumed. But when the word is incapable of becoming a valid trade-mark, because descriptive or geographical, yet has by use come to stand for a particular maker or vendor, its use by another in this secondary sense will be restrained as unfair and fraudulent competition, and its use in its primary or common sense confined in such a way as will prevent a probable deceit by enabling one maker or vendor to sell his article as the product of another."

The doctrine is well supported by the case of Elgin Watch Co. v. Illinois Watch Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365.

In the case of Columbia Mill Co. v. Alcorn, 150 U. S. 461, 463, 14 Sup. Ct. 151, 152, 37 L. Ed. 1144, it is said "that if the device, mark, or symbol was adopted or placed upon the article for the purpose of identifying its class, grade, style, or quality, or for any purpose other than a reference to or indication of its ownership, it cannot be sustained as a valid trade-mark."

In Lawrence Mfg. Co. v. Tennessee M. Co., 138 U. S. 537, 547, 11 Sup. Ct. 396, 400, 34 L. Ed. 997, the court said:

"Nothing is better settled than that an exclusive right to the use of word letters, or symbols to indicate merely the quality of the goods to which they are affixed cannot be acquired. And while if the primary object of the mark be to indicate origin or ownership, the mere fact that the article has obtained such a wide sale that it has also become indicative of quality is not of itself sufficient to debar the owner from protection, and make it the common property of the trade; yet if the device or symbol was not adopted for the purpose of indicating origin, manufacture, or ownership, but was placed upon the article to denote class, grade, style, or quality, it cannot be upheld as technically a trade-mark."

The case of Deering Harvester Co. v. Whitman & Barnes Co., decided by this court and reported in 91 Fed. 376, 33 C. C. A. 558, involved substantially the question here to be decided. There it was sought to appropriate a series of letters and numbers used in connection with the different parts of reapers and mowers as valid trade-marks. Relief was denied upon the ground that the primary design was to distinguish the several parts of such machines and facilitate the ordering of repairs for broken parts.

In respect to the adaptability of the series of numerals and letters there involved to point out origin of manufacture we said:

"The claim that inasmuch as these marks are found only in 'association' with machines which do bear the trade name or mark, or both, of the Deering Harvester Company, they thereby serve to indicate that company as the common source of all articles having a like designation, is not sufficient to justify their appropriation as trade-marks. Any office which these marks perform as designations of origin is purely accidental. The fact that no two distinct parts in the same machine bear the same numerals is altogether persuasive of the fact that their purpose is not that of indicating the producer. Without explanation, such a multitude of different marks would convey no meaning. When explained, as they always have been and always must be, the explanation is that they are intended to designate size, shape, and place in the machine, and are to be used to distinguish one piece or part from another having a different function. This purpose does not tend, in any way but the most remote way, to indicate the producer or maker. If each of such parts had some common symbol in addition to the varying marks indicating place and size and shape, we would have marks capable of the double duty claimed for those actually used. The system of so defining the place, size, and shape of a part of a machine is not original with appellants. It is common to many other manufacturers. The purpose is to facilitate replacements."

The cases of Humphrey Specific Co. v. Hilton (C. C.) 60 Fed. 756, and Smith & Davis Co. v. Smith (C. C.) 89 Fed. 486, may be also consulted.

Without deciding whether the adoption of a numeral with the alleged double purpose of both indicating origin and quality is fatal to the bill, it is enough for the purposes of this case to find, as we do, that the averments of this bill, considered as a whole, do not show a case of the use of a number or word or sign or symbol designed, "as its primary object and purpose, to indicate the owner or producer of the commodity, and to distinguish it from like articles manufactured by others." Mill Co. v. Alcorn, 150 U. S. 468, 14 Sup. Ct. 152, 37 L. Ed. 1144. Complainant's numbers used in association with the name of the complainant subserved

no purpose in indicating origin, for that was made plain by the name itself. Without the name of the maker, the number, especially when one of a large number used severally in association with the sale of other articles having same origin, would be meaningless without explanation. The usual office of a number, whether one of a series or one arbitrarily selected, is to indicate grade, quality, quantity, or some other characteristic. These numbers having been adopted and use for the ordinary purpose of a numeral could point to origin only in a secondary way, and used in this sense they are not good trade-marks. Neither is a case for restraining the use of these numbers in their secondary sense by the defendants. The labels themselves in shape, size, color of border, etc., are not the subjects of a monopoly. The use made of the numbers in question by defendants is descriptive wholly, for the only way in which it is shown that they are used by the defendants is in connection with their own corporate name upon the outside of packages of labels and in catalogues. So far as they are descriptive of size, color, style, etc., and are used in this signification only, they are open to use by any one. Averments that they have been used for the purpose of deceiving purchasers, defrauding the public, or injuring complainants are not borne out by the specific facts stated as to how defendants use said numbers. Such general averments are epithetic, not specific, and are to be read in the light of the specific things stated.

Decree affirmed.

NOTE.—The following is the opinion of the Circuit Court:

SWAN, District Judge. In this cause a decree sustaining a plea of res judicata and dismissing the bill was reversed and the cause remanded for further proceedings. The defendant, without leave, filed a demurrer to the bill. Complainant has practically waived this irregularity, saying: "We think this demurrer should be overruled because after a plea it should not have been filed. But the bill sets forth our case, as we understand it, and we discuss the questions presented in the hope of securing an expression of opinion which will shorten, if not terminate, what has proved to be a very long litigation." Complainant, premising that the only question presented is whether the bill sets forth a cause of action, summarizes the grounds of demurrer into two propositions, viz.: "(1) That the bill does not set forth any valid trade-mark rights; (2) that the acts of the defendant set forth in the bill do not constitute unfair competition in trade." To the discussion of these propositions complainant's brief is unreservedly addressed, and, in compliance with the suggestion of complainant, the questions will be disposed of upon the demurrer.

The questions arising on this demurrer were examined at length and decided adversely to complainant upon a demurrer to a previous bill for infringement of trade-mark and to restrain unfair competition, the allegations of which are substantially the same as those contained in the present bill, except as to the numerals charged to have been used by defendant. Complainant appealed from a decree sustaining the demurrer to the first bill, but dismissed its appeal and renewed the litigation, founding its right to relief upon other numerals of its order system. To the present bill a plea of res judicata was sustained, but on appeal this was held error for the reasons stated in Dennison Manufacturing Company v. Scharf Tag, Label & Box Company, 121 Fed. 313, 57 C. C. A. 9.

The single point in judgment determined by the Court of Appeals was the sufficiency of the plea of res judicata. It held that the estoppel of the judg-

ment on demurrer to the first bill "extended only to the exact point raised by the pleadings as described, i. e., the use of the identical numerals complained of in the first suit, and that the plea went to the whole bill and all relief under it. It is therefore too broad, and the court erred in sustaining it." Complainant submits some additional authorities to those presented on the first demurrer, and these may be briefly considered.

Complainant's first contention is: "(1) The numbers constitute valid trade-marks. The allegations in regard to the numerals involved are in part that they were arbitrarily selected to indicate origin, that they have been continuously used for many years as trade-marks, and that as trade-marks they have been known, respected, and availed of by the trade and the public. The mere fact that the marks in question consist of numerals will hardly be used as justifying their appropriation by the defendant."

To this proposition Gillott v. Esterbrook, 48 N. Y. 375, 8 Am. Rep. 553; Lawrence Co. v. Lowell Mills, 129 Mass. 325, 37 Am. Rep. 362; and other cases were cited.

Again, * * * the bill alleges "that such number has continuously and always, in addition to giving notice of and indicating origin of the label as being of your orator's manufacture, given notice of and indicated the color of border, size, and shape of the label." This, being admitted by the demurrer, it is claimed is decisive of complainant's right to the relief prayed.

I cannot yield to the contention that the numerals alone constitute a trademark. It is well settled that "the office of a trade-mark is to point out distinctively the origin or ownership of the article to which it is affixed, or, in other words, to give notice who was the producer. * * * In all cases where rights to the exclusive use of a trade-mark are invaded, it is invariably held that the essence of the wrong consists in the sale of the goods of one manufacturer or vender as those of another, and that it is only when this false representation is directly or indirectly made that party who appeals to a court of equity can have relief." Canal Co. v. Clark, 13 Wall. 322, 20 L. Ed. 581; Manufacturing Co. v. Trainer, 101 U. S. 54, 25 L. Ed. 993.

It is as true of the use of the numerals in this case as it was of the letters claimed as trade-marks in the case last cited, that they do not "themselves suggest anything and require explanation before any meaning can be attached to them." 101 U. S. 55, 25 L. Ed. 993. They do not alone point to origin or complainant's ownership. They give that information only when preceded by the proper name "Dennison's." By adding that name they "give notice who was the producer." The vital part of the alleged trademark is therefore not the numeral but the name of the maker. The bill concedes that the numerals themselves are but "short trade phrases between buyer and seller," and, further, that they serve to designate to the manufacturer the color and size of the labels desired by the customer. They have no significance to the general public outside the trade, nor even to those of the trade who are not customers of complainant. When coupled with defendant's name, and designated "Scharf's No. 2,004," etc., they warn the trade and the public of the origin and ownership, and proclaim that Scharf, not Dennison, is the producer. Liggett & Myers Co. v. Finzer, 128 U. S. 184, 9 Sup. Ct. 60, 32 L. Ed. 395; Mfg. Co. v. Trainer, 101 U. S. 54, 25 L. Ed. 993.

Each manufacturer thereby notifies his customers that an order for labels of a given number will be filled by labels of a certain color and size.

There is nothing in Lawrence v. Lowell Mills Co., 129 Mass. 325, 37 Am. Rep. 362, nor in Gillott v. Esterbrook, 48 N. Y. 374, 8 Am. Rep. 553, that sustains the proposition that numerals alone are valid trade-marks. The first case holds merely that numerals arbitrarily selected and used on goods in combination with other devices to denote the origin of the goods, and not their quality, are a valid trade-mark. In that case the numbers were associated with designs stamped upon the goods of both parties, prominent features of which were an eagle and a scroll or wreath. "The only question," said Judge Colt in that case, "presented upon this report [of the judge who tried the cause], therefore, is whether the plaintiff's stamp including the figures constitutes such a trade-mark as the law will protect. In the second case, as in the first, the numeral '303' was impressed upon the article

of manufacture—the steel pen. The defendants made and sold a steel pen which in size, shape, color, pattern, flexibility, and fineness of point so closely resembles the said pen of the plaintiff as to require an expert or adept to distinguish them in those respects." There was also evidence of a studious imitation of the stamp of plaintiff calculated to mislead, and of a striking similarity in the size and appearance of the boxes in which plaintiff's pens were packed.

It is further said by Judge Colt: "The difficulty of giving to bare numbers the effect of indicating origin or ownership, and of showing that the numbers were originally designed for that purpose, was recognized in Boardman v. Meriden Britannia Co., 35 Conn. 402 [95 Am. Dec. 270]. * * * The numbers in that case, however, were associated with the name of the plaintiff, and with the form, color, and general arrangement of the labels used, and were held by virtue of that connection to form an important part of the trademark itself."

In Shaw Stocking Co. v. Mack (C. C.) 12 Fed. 707–711, Judge Coxe holds that "names, ciphers, monograms, pictures, and figures may be used" (as trade-marks). No authority, however, is cited which supports the broad proposition that numerals alone may be adopted as a trade-mark. The decisions in 48 N. Y. (8 Am. Rep.), 35 Conn. (95 Am. Dec.), and 129 Mass. (37 Am. Rep.), which that case invokes, rest their conclusions upon the fact that the figures were part of the trade-mark itself, and evidenced, with other features of the trade-mark, the infringement of complainant's rights.

In Humphrey's Specific, etc., Co. v. Wenz (C. C.) 14 Fed. 250, referred to by complainant, it is not held that numbers alone constitute a trade-mark, but the contrary. Judge Nixon's language is: "Mere numbers are never the objects of a trade-mark when they are allowed to indicate quality, but they may be where they stand for origin or proprietorship, in combination with words and other numerals." The great weight of authority denies the sufficiency of numerals used descriptively to constitute a trade-mark.

In Coats v. Merrick Thread Co., 149 U. S. 572, 13 Sup. Ct. 969, 37 L. Ed. 847, it is said: "* * * It is clear that no such monopoly trade-mark could be claimed of mere numerals used, and therefore not capable of exclusive appropriation because they represent the number of the thread, and are therefore of value as information to the public. * * * Clearly the plaintiffs cannot, as patentees, claim a monopoly of these numerals beyond the life of the patent; and it is equally clear that when used for the purpose of imparting information they are not susceptible of exclusive appropriation as a trade-mark, but are the common property of all mankind." The numerals used by complainant in this case are equally descriptive to customers of the sizes and colors of the labels made by complainant, and therefore not claimable as trade-marks.

The same principle is applied to a somewhat different state of facts in the Deering Harvester Co. v. Whitman, 91 Fed. 376, 380, 33 C. C. A. 558.

In line with the foregoing cases are Humphrey's Homeopathic Co. v. Hilton (C. C.) 60 Fed. 756, and Smith & Davis Mfg. Co. v. Smith (C. C.) 89 Fed. 486.

The system of complainant which substitutes the "short trade phrases" expressed in the numerals for a description by color and dimensions is neither novel nor indication of original ownership, so as to be capable of exclusive appropriation. It is "a useful contrivance for the dispatch of business" between the seller and his customer, but complainant's and defendant's numeral designations of their respective labels do not convey the same information. Any one may use the system, which is one of purely arbitrary numerals. Perris v. Hexamer, 99 U. S. 675, 25 L. Ed. 308. ·

2. Does the bill state a case of unfair competition in trade? As any one may make and sell labels of any size, shape, and color—when at least the design or configuration is not protected by patent—and as it is not claimed that in either of these features complainant's labels depart from types common to trade, it is not apparent how the defendant can be guilty of unfair competition by employing the same numerals as complainant as "short trade phrases" to designate to its customers the size and colors of its manufactures. It is not charged that it represents to the public that its goods are made

by complainant in any other manner or by any other means than by the adoption of the short phrase system, which is not original with complainant, but old, well known, and widely used. The name of each manufacturer notifies the origin or ownership of the goods. The charge that the numeral is used "fraudulently" "is not material," as is said in Globe Wernicke Co. v. Fred Macey Co., ·119 Fed. 704, 56 O. C. A. 304, which presents a striking parallel to complainant's contention, "if the complainant has a right to do that which is complained of." The defense here is infinitely stronger than in that case, in that the complainant's grievance is not that its manufactures are simulated, but only that its numerical system of designating its wares to customers is utilized by defendant with its customers for a like purpose— as a "short trade phrase" denoting the size and color of label required or sent. If the public have been misled into the purchase of defendant's labels for complainant's, as the bill charges, when the catalogues and packages of each party plainly announce the manufacturer's name, the fault is that of the purchaser and the error gives no right to equitable relief. Globe Wernicke Co. v. Fred Macey Co., supra.

The insistence of complainant that the use by defendant of the same numbers to designate the same sizes and colors of labels as those which complainant employs for its sizes and colors is unfair competition does not differentiate the case made by the present from that set up in the former bill.

For the foregoing reasons and those given for sustaining the demurrer to the first bill the demurrer is sustained and the bill dismissed, with costs.