## GOLDSMITH SILVER CO. v. SAVAGE.

(District Court, D. Maine.  August 23, 1913.)

### No. 703.

TRADE-MARKS AND TRADE-NAMES (§ 95*)—INFRINGEMENT AND UNFAIR COMPETITION—PRELIMINARY INJUNCTION.

A preliminary injunction, before the answer is filed and the issues made up, in a suit for infringement of a trade-name and unfair competition, should not be granted, complainant's rights not being free from doubt, and there being a sharp contention on all the points presented, especially in view of the new equity rules, enabling parties to obtain a speedy hearing.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 108; Dec. Dig. § 95.*]

In Equity.  Suit by the Goldsmith Silver Company against Llewellyn W. Savage.  In the matter of complainant's motion for a temporary injunction.  Motion denied.

Harry C. Silver, of Boston, Mass., and Maurice E. Rosen, of Portland, Me., for complainant.

Frank Fellows, of Portland, Me., and P. B. Gardner, of Bangor, Me., for defendant.

HALE, District Judge.  In its bill the complainant shows: That it and its assignors since 1886 have been the manufacturers of a five-cent cigar, called the "108," the trade-mark or trade-name of which was given it for the reason that complainant's first place of business was 108 State street, Boston.  This name has been used continuously, and is now used, in connection with this cigar, a five-inch cigar, Londres shape, with a Connecticut seed wrapper, known as a block cigar.  On it appear the letters "G. S. & Co., Boston, Mass., 108."

For a number of years the defendant has been engaged in the sale of cigars in Maine, especially in the sale of a so-called "208" cigar; the sales being for the most part in Penobscot, Washington, and Aroostook counties.  That defendant's cigar is also a five-cent cigar, and a five-inch cigar, Londres shape.  It also has a Connecticut seed wrapper, bears no branding, and the only difference between the two cigars, aside from the branding, is that the cigar made by the complainant is of clear Havana, scrap filling, made from clippings from ten-cent cigars, while the defendant's cigar is a so-called long filler, but of much inferior tobacco.  That it is impossible to distinguish the difference between the two cigars, except by cutting them open, and then finding that one is a long filler and the other a short filler.  Three or four years ago the complainant discovered the use by the defendant of the trade-mark "208," and immediately wrote to the defendant, notifying him that it was an infringement, and afterwards wrote again. Later it appeared to the complainant that the 208 cigar was taken off the market; and nothing further was done until recently, when complainant discovered that cigar 208 was again on the market.  After bringing the matter to the attention of the defendant, this bill in equity

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was brought. Complainant enjoys a large sale of his 108 cigar in the section where the 208 cigars are sold. The complainant makes the above allegations, and says that these facts were known to the defendant; he having been engaged in the cigar business for many years.

The bill sets up infringement of the trade-mark, and unfair competition. The complainant now asks for a temporary injunction. Many affidavits and exhibits are brought before me.

Without commenting in detail upon the proofs, it is sufficient to say that complainant has not shown a case sufficiently strong to satisfy me that a temporary injunction should be granted. The learned counsel for the complainant urges that its trade is suffering near Bangor, and in the eastern portion of the state, from this alleged infringement, and from defendant's unfair competition. The testimony is, however, conflicting. The labels which are found upon the cigar boxes of the defendant are entirely different from those of the complainant's. There are no such resemblances as have been found vital in the Daoust Case, 206 Fed. 434, in which an opinion has just been handed down by the Court of Appeals in this circuit.

On the question of unfair competition, the complainant's proofs do not satisfy me that there is such similarity in the two cigars, or of the two boxes, as would induce ordinary purchasers to accept the defendant's goods in place of complainant's.

Before an answer is filed and the issues made up, the granting of a preliminary injunction is a matter resting in the discretion of the court. Such injunction ought not to be granted unless the injury is pressing, delay dangerous, and the complainant's rights are made entirely free from doubt. Foster's Federal Practice (4th Ed.) § 233; Irwin v. Dixon, 9 How. 10, 13, 13 L. Ed. 25; Van Camp Packing Co. v. Cruikshanks Bros. Co.; 90 Fed. 814, 33 C. C. A. 280.

In the case at bar, complainant's rights are not free from doubt. There is a sharp contention on all the points presented before me. The bill shows the likelihood of other contentions when the issues are made up. The new equity rules enable parties to obtain a speedy hearing. In exceptional cases, where promptness of action is required, rules 47 (198 Fed. xxxi, 115 C. C. A. xxxi), 54 (198 Fed. xxxiii, 115 C. C. A. xxxiii), and 56 (198 Fed. xxxiv, 115 C. C. A. xxxiv) may be invoked, to promote dispatch. With these rules now available, a court should be especially careful not to cumber a case with temporary injunctions or restraining orders before the issues are presented, so that the case can be fully and finally disposed of.

Motion for a temporary injunction is denied.