## GOLDSMITH SILVER CO. v. SAVAGE.

(District Court, D. Maine. March 16, 1914.)

No. 703.

1. TRADE-MARKS AND TRADE-NAMES (§ 5*)—MARKS CAPABLE OF APPROPRIATION—NUMERALS.

A numeral when combined with some other symbol may become a vital part of a valid trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 9; Dec. Dig. § 5.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNLAWFUL COMPETITION—CIGARS.

Where defendant, after jobbing complainant's cigars sold under a trade-name "108," ceased buying the same and put out a cigar of his own under the name "208" of similar size and shape but in a box so differently marked and labeled that it did not appear natural or probable that the public would be deceived or that defendant's goods would be passed off as those of complainant's, the facts did not sustain a cause of action for unlawful competition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*]

In Equity. Suit by the Goldsmith Silver Company against Llewellyn W. Savage. Complaint dismissed.

Harry Silver, of South Bend, Ind., and Maurice E. Rosen, of Portland, Me., for complainant.

Phillips B. Gardner, of Bangor, Me., and Frank Fellows, of Portland, Me., for defendant.

HALE, District Judge. This case has already been before the court. 206 Fed. 1001. A preliminary injunction was denied. After passing on that question, and in order to bring the case promptly to a final hearing, it was decided to proceed immediately to pleadings and proofs. Inasmuch as the court was just entering upon a term of jury trials, the case was referred to Hon. John F. A. Merrill, as master, under Equity Rule 59 (198 Fed. xxxv, 115 C. C. A. xxxv). After the pleadings were made up, the master proceeded promptly with the proofs.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

He has now reported his finding of facts and conclusions of law. He has found that the complainant has not shown a valid trade-mark in the symbol "108," and is not entitled to an injunction on account of infringement of such alleged trade-mark. He has further found that the complainant has not established a case of unfair competition on the part of the defendant such as will entitle it to an injunction or to an accounting.

[1] Upon examination of the proofs, it seems clear that this cause belongs to the line of unfair competition cases, rather than to the technical trade-mark cases. It has been held that a numeral, when combined with some other symbol, may become a vital part of a valid trade-mark. In Dennison Manufacturing Co. v. Scharf Tag, Label & Box Co., 135 Fed. 625, 68 C. C. A. 263, Judge Lurton (now Mr. Justice Lurton) refers to Gillott v. Esterbrook, 48 N. Y. 374, 8 Am. Rep. 553, as giving some support to the contention that a bare number is capable of being a valid trade-mark. In the case at bar the proofs fall far short of entitling the complainant to any relief by way of injunction, or otherwise, on the ground of infringement of any technical trade-mark. The proofs, however, present a much more difficult problem in the matter of unfair competition.

[2] It is urged on the part of the complainant that for 20 years, in the eastern part of Maine, it has manufactured, advertised, and sold cigars under the name "108"; that, during the early part of this time, the defendant was a jobber of cigars, and bought the cigars in question, and was therefore well acquainted with the brand; that, some years later, he stopped buying them, and began selling a cigar of his own under the name "208"; and that he did this in practically the same territory in which the complainant's cigar had been sold. The complainant therefore urges that these facts necessarily point to the conclusion that the defendant adopted the symbol "208," on account of its similarity to the complainant's symbol "108"; that he sold his cigar marked "208" with the intention of taking advantage of the advertising done by the complainant for the cigar "108"; and that he did this with the further intention of unfairly competing with complainant in the territory in question.

The proofs show that for many years the defendant has been manufacturing and selling his cigar in Eastern Maine under the style 208; that for about six years the complainant has had knowledge of this; but has taken no proceedings to enjoin such manufacture and sale. On examination of the proofs, it is found that the cigar box marked 108, when compared with the defendant's cigar box marked 208, shows no such resemblance between the two as would naturally lead to any deception. The labels on the boxes are different. The shape and size of the boxes are different. Their general appearance is dissimilar. The numerals upon the respective boxes differ in size, and in the place where marked on the boxes; they present no similarity to the eye. The size of the cigars themselves are practically the same; they are Londres shape, and five inches long. The cigars in the complainant's box are branded with complainant's numerals; those in the defendant's box are not branded. It is urged on behalf of the complainant

that the defendant has adopted the particular size and shape of the cigar with an intent to deceive, and to unfairly compete. In the Daoust Case, 206 Fed. 434, 124 C. C. A. 316, lately decided in this circuit, the defendant had his bottles manufactured for him of the same shape and appearance as those used by the complainant; so that, when used for dispensing the beverage over the counter, the resemblance of the bottles was so close that the Bo La bottle appeared to the casual inspection of the customer to be a Moxie bottle. There was also a great mass of testimony to the effect that many retail dealers, when asked for Moxie, served Bo La from Bo La bottles. In the Moxie Case (D. C.) 197 Fed. 678, such testimony with regard to the custom of retail dealers was full and convincing. In the case at bar, such testimony is meager and unsatisfactory. The shape of the cigar is of the ordinary Londres variety. It is in testimony that there is on the market at the present time a great number of brands of similar shape. On examination of the boxes and labels, it seems clear that there would be scarcely a possibility of a dealer being deceived in buying cigars from boxes of the defendant, and of being led to suppose that he was buying complainant's cigars.

The learned counsel for complainant urges with great earnestness and ability that, by manufacturing his cigars and selling them under the symbol 208, the defendant put into the hands of retail dealers means of deceiving the ultimate consumer by substituting the 208 brand for the 108 brand manufactured by complainant. He introduces testimony of witnesses who, at the request of complainant's manager, visited various places where cigars were sold with a view of showing that the purchasing public was being deceived. Without going into a detailed discussion of these proofs, I find that they are very incomplete. Upon this point the report of the special master is clear, and helpful to the court. After summarizing the testimony upon the point to which I have alluded, the master says:

"To me the testimony of the complainant's two witnesses as to their alleged purchases tends to show that an unscrupulous retail dealer, who is trying to defraud a purchaser by palming off a different cigar from that asked for, whether a 108 or 208, might possibly be able so to do provided his customer did not know the real name of the cigar he wanted; that is, that he might possibly substitute a 108 when a 208 cigar was asked for, or vice versa, and that he could equally well give any other cigar of the same shape and size either when a 208 or a 108 was asked for. Therefore the putting of the 208 cigar upon the market by the defendant would not especially help the retail dealer to pass off his cigar when a 108 cigar was asked for, when he might as well pass off any other cigar of the same general shape, size, and color, of which, as appears from the testimony, there are about 1,000,000 brands. On this point I call attention to the fact that the complainant's counsel admits in his argument that they have no monopoly of the manufacture of the Londres, five-inch cigar, but that it is a universal shape and size, and from the testimony of complainant's manager himself it appears that there are a million brands of cigars manufactured of similar shape and size. * * * The boxes are of different size and entirely dissimilar in appearance except for the name, and, although the cigars themselves of both complainant and defendant are of similar size and shape, complainant's counsel admits that they have no monopoly or exclusive right to the use of this particular size and shape. Also it is of importance that each of complainant's cigars were stamped with the symbol or numerals 108, whereas the cigars of the defendant had no stamp

211 F.—48

upon them. In other words, the cigars themselves manufactured by the defendant in this case were simply on general lines and were only similar to cigars manufactured by complainant as all cigars of this shape and size are. * * * The adoption of the universal Londres shape and size by the defendant for his cigar was not necessarily done, as complainant's counsel would have us believe, for the purpose of furnishing to the retailer under the name 208, a cigar which the retail dealer might palm off on intending purchasers of complainant's 108 cigar. In fact, it would seem that the mere use of the name or symbol 208 by a wholesale manufacturer would be of little or no assistance to the retail dealer if he wished to substitute an inferior cigar in the place of the 108 cigar; it being shown by the exhibits in the case that there was no special resemblance between the cigar boxes of complainant and defendant other than the symbol or numerals, which symbol or numerals, under most circumstances, were not visible to the purchaser. In other words, any cigar of this universal size and shape could have been as easily substituted for the 108 cigar as the one bought by the retailer under the name 208."

In view of the evidence that there is a multitude of brands of cigars manufactured of similar shape and size, it cannot be held that the rule should be applied requiring an article which is likely to deceive as to its origin to be distinctly tagged with the name of the real producer, as in the Coca Cola Case, 200 Fed. 720, 725, 119 C. C. A. 164. In the case now before me, the proofs fail to show a purpose on the part of the defendant that this cigar should be used by dealers to deceive customers. Neither the shape of the cigars themselves, nor the boxes, nor the labels are calculated to mislead purchasers as to the origin of defendant's goods. Manufacturing Co. v. Trainer, 101 U. S. 51, 56, 25 L. Ed. 993. A careful examination of all the proofs leads me to the conclusion that they do not show conduct, on the part of the defendant, the natural, probable tendency and effect of which is to deceive the public, or to pass off defendant's goods as those of complainant. The complainant, then, has not met the burden of showing unfair competition by satisfactory proofs.

The report of the master is confirmed.

The complainant's bill is dismissed, with costs for defendant.